IN THE DISTRICT COURT OF GUAM

TERRITORY OF GUAM

UNITED STATES OF AMERICA,   ) Criminal Case No. 18-00010
                        )
             Plaintiff,  )
                        )
        vs.            )
                        )
JOHN D. WALKER,          )
aka JON WALKER,          )
MARVIN R. REED,          )
KENNETH R. CROWE,       )
PHILLIP T. KAPP,        )
                        )
_____  Defendants. )

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE MICHAEL J. BORDALLO,
MAGISTRATE JUDGE
(Via telephone)
MAY 6, 2020; 9:00 A.M.
HAGATNA, GUAM

**Motion Hearing on an Amended Motion for Hearing to Address**　09:01:50AM
**Potential Conflict of Interest and a Motion for Protective**　09:01:54AM
**Order, Prevent Removal of Evidence, Schedule Inspection,**　09:01:58AM
**Prevent Harassment of Witnesses**　09:02:01AM

Proceedings recorded by *mechanical stenography*.

Veronica F. Flores, CSR-RPR
Official Court Reporter
520 W. Soledad Avenue
Hagatna, Guam 96910

APPEARANCES


Appearing on behalf of plaintiff:


**OFFICE OF THE UNITED STATES ATTORNEY**
**BY: STEPHEN LEON GUERRERO, AUSA** (via telephone)
**MARIE MILLER, SAUSA** (via telephone)
Suite 500, Sirena Plaza
108 Hernan Cortez Avenue
Hagatna, Guam 96910
(671) 472-7332


Appearing on behalf of Defendant Walker:


**LAW OFFICE OF JAMES M. MAHER**
**BY: JAMES M. MAHER, ESQ.** (via telephone)
238 Archbishop Flores Street
Suite 300, DNA Building
Hagatna, Guam 96910
(671) 477-7892

**BY: MACK K. MARTIN, ESQ.** (via telephone)
125 Park Avenue, 5th Floor
Oklahoma City, OK 73102


Appearing on behalf of Defendant Reed:

**LAW OFFICE OF PETER C. PEREZ**
**BY: PETER C. PEREZ, ESQ.** (via telephone)
238 Archbishop Flores Street
Suite 802, DNA Building
Hagatna, Guam 96910
(671) 475-5055

Appearing on behalf of Defendant Crowe:

**LAW OFFICE OF LUJAN & WOLFF**
**BY: DAVID J. LUJAN, ESQ.** (via telephone)
238 Archbishop Flores Street

**LAW OFFICE OF GREGORY NICOLAYSEN**
**BY: GREGORY NICOLAYSEN, ESQ.** (via telephone)
27240 Turnberry Lane, Suite 200
Valencia, CA 91355
(818) 970-7247

Appearing on behalf of Defendant Kapp:

**LAW OFFICE OF ANTHONY C. PEREZ**
**BY: ANTHONY C. PEREZ, ESQ.** (via telephone)
238 Archbishop Flores Street
Suite 802, DNA Building
Hagatna, Guam 96910
(671) 475-5055

**BY: EDWARD A. MCCONWELL, ESQ.,** (via telephone)
**LAURA L. MCCONWELL, ESQ.** (via telephone)
5201 Johnson Drive, Suite 300
Mission, KS 66205

Appearing on behalf of Defendant Hansen:

**LAW OFFICE OF EDWARD C. HAN**
**BY: EDWARD C. HAN, ESQ.** (via telephone)
378 Sara Street
Purple Heart Highway
Maite, GU 96910
(671)477-9219

Appearing on behalf of Defendant Rogers:

**LAW OFFICE OF GUMATAOTAO & POLE**
**BY: WILLIAM B. POLE, ESQ.** (via telephone)
Suite 301, San Ramon Building
115 San Ramon Street
Hagatna, GU 96910
(671)475-0200

ALSO PRESENT:

John Walker, Defendant (via telephone)

Marvin Reed, Defendant (via telephone)

Kenneth Crowe, Defendant (via telephone)

Phillip Kapp, Defendant (via telephone)

Viranousith Khamvongsa, IRS agent (via telephone)
--------------------------------------------------
I N D E X

                                              Page

Court to take matters under advisement and
issue decision shortly                        38

| | |
|---|---|
| 1 |           May 6, 2020; 9:01 a.m.; Hagatna, Guam | 09:00AM |

```
 1              May 6, 2020; 9:01 a.m.; Hagatna, Guam          09:00AM

 2                         * * *                                09:00AM

 3              THE CLERK:  Your Honor, all the parties are     09:01AM

 4    present.                                                  09:01AM

 5              THE COURT:  All right, go ahead and call the case  09:01AM

 6    then.                                                     09:01AM

 7              THE CLERK:  Okay, Your Honor.  Come to order, the  09:01AM

 8    District Court of Guam is now in session, the Honorable   09:01AM

 9    Michael J. Bordallo presiding on Criminal Case 18-00010, USA  09:01AM

10    versus John D. Walker, Marvin R. Reed, Kenneth R. Crowe,   09:01AM

11    Phillip T. Kapp, Randall Rogers, and Hansen Helicopters on a  09:01AM

12    Motion Hearing on an Amended Motion for Hearing to Address  09:01AM

13    Potential Conflict of Interest and a Motion for Protective  09:01AM

14    Order, Prevent Removal of Evidence, Schedule Inspection,   09:01AM

15    Prevent Harassment of Witnesses.                          09:02AM

16              Counsels, please state your appearance, starting  09:02AM

17    with the government.  And we'll go from Defendant 1 all the  09:02AM

18    way down.  Thank you.                                     09:02AM

19              MR. LEON GUERRERO:  Buenas and hafa adai, Your   09:02AM

20    Honor, this is Assistant U.S. Attorney Stephen Leon Guerrero.  09:02AM

21    Also present with me is IRS Agent Sith Khamvongsa.  Also   09:02AM

22    present is co-counsel, Special Assistant U.S. Attorney Marie  09:02AM

23    Miller.                                                   09:02AM

24              MS. MILLER:  Hafa adai, Your Honor.              09:02AM

25              THE COURT:  Hafa adai.                           09:02AM
```

| | |
|---|---|
| 1 | MR. MARTIN:  Your Honor, this is Mack Martin.  I | 09:02AM |
| 2 | represent John Walker.  I'm getting him on the other line.  I | 09:02AM |
| 3 | had accidentally disconnected him, but he'll be on the phone | 09:02AM |
| 4 | in just a moment. | 09:02AM |
| 5 | THE COURT:  And is local Counsel, Jim Maher, also | 09:02AM |
| 6 | on or is it just you, Mr. Martin? | 09:02AM |
| 7 | MR. MARTIN:  Mr. Maher is on. | 09:02AM |
| 8 | THE COURT:  Okay.  All right, thank you. | 09:02AM |
| 9 | MR. PEREZ:  Good morning, Your Honor, Peter Perez | 09:02AM |
| 10 | present with Mr. Reed by telephone. | 09:02AM |
| 11 | THE COURT:  Okay.  Thank you. | 09:03AM |
| 12 | MR. LUJAN:  Good morning, Your Honor, -- Lujan | 09:03AM |
| 13 | and, you know, and also on the phone is Gregory Nicolaysen on | 09:03AM |
| 14 | behalf of Rufus Crowe and Mr. Nicolaysen will be arguing on | 09:03AM |
| 15 | behalf of Mr. Crowe. | 09:03AM |
| 16 | MR. NICOLAYSEN:  Good morning, Your Honor, Greg | 09:03AM |
| 17 | Nicolaysen here from Los Angeles. | 09:03AM |
| 18 | MR. POLE:  Attorney William Pole, Your Honor -- | 09:03AM |
| 19 | go ahead. | 09:03AM |
| 20 | THE COURT:  Go ahead, go ahead. | 09:03AM |
| 21 | MR. POLE:  William Pole, Your Honor, on behalf of | 09:03AM |
| 22 | Randall Rogers.  He's in Georgia. | 09:03AM |
| 23 | THE COURT:  Okay. | 09:03AM |
| 24 | MR. MCCONWELL:  Edward McConwell, Laura McConwell | 09:03AM |
| 25 | on behalf of Phillip Kapp, and Mr. Perez is on the phone too. | 09:03AM |

*Criminal Case No. 18-00010, USA v. Walker, et al.*

|  |  |
|---|---|
| 1 | (Pause.) |
| 2 | THE COURT: All right. |
| 3 | MR. HAN: This is Ed Han for Hansen Helicopters. |
| 4 | THE COURT: Okay, and Mr. Nicolaysen, on behalf |
| 5 | of Mr. Lujan, has Mr. Nicolaysen filed his pro hac vice in |
| 6 | this case already? |
| 7 | MR. NICOLAYSEN: Yes, Your Honor, it was done two |
| 8 | years ago. |
| 9 | THE COURT: Okay. All right. So he -- I haven't |
| 10 | seen but I saw -- all right. Thank you. All right. Let's go |
| 11 | for the first matter before the Court is the amended motion |
| 12 | for a hearing to address potential conflicts and what I don't |
| 13 | need is I don't need a repeat of anything that's contained in |
| 14 | the briefs. |
| 15 | So beginning with the government, is there |
| 16 | anything in addition to what's been filed that you wish the |
| 17 | Court to be aware of? |
| 18 | MR. LEON GUERRERO: Yes, yes, Your Honor. Thank |
| 19 | you. Stephen Leon Guerrero. So really, in addition to, you |
| 20 | know, the arguments that were raised in our filing, it has |
| 21 | come to our attention that there is in fact a joint defense |
| 22 | agreement amongst the defendants and that was something we |
| 23 | weren't aware of or sure of when we initially filed this |
| 24 | motion, and because we've been made aware of that, you know, |
| 25 | we're simply asking the Court to make sure that there's no, |

09:03AM
09:03AM
09:03AM
09:03AM
09:03AM
09:04AM
09:04AM
09:04AM
09:04AM
09:04AM
09:04AM
09:04AM
09:04AM
09:04AM
09:04AM
09:04AM
09:04AM
09:04AM
09:04AM
09:04AM
09:04AM
09:04AM
09:04AM
09:04AM
09:05AM

*Criminal Case No. 18-00010, USA v. Walker, et al.*

| | | |
|---|---|---|
| 1 | you know, potential for conflict of interest in any way to be | 09:05AM |
| 2 | able to conduct an in camera review of that joint defense | 09:05AM |
| 3 | agreement to determine if there's any potential for conflict | 09:05AM |
| 4 | of interest.  You know, the big concern, you know, that the | 09:05AM |
| 5 | government has is, we have Defendant Hansen who wasn't a | 09:05AM |
| 6 | defendant in the initial indictment, um, is a defendant now, | 09:05AM |
| 7 | and our concern is, if Defendant Hansen is paying the legal | 09:05AM |
| 8 | fees of its co-defendants, you know, there is a potential for | 09:05AM |
| 9 | conflict of interest if one of these defendants chooses to | 09:05AM |
| 10 | want to cooperate and assist the government against its | 09:05AM |
| 11 | co-defendants but can't because Defendant Hansen is paying its | 09:05AM |
| 12 | attorneys fees. | 09:05AM |
| 13 | So, you know, that is a conflict of interest that | 09:05AM |
| 14 | the government is trying to avoid.  The other thing, too, is | 09:05AM |
| 15 | you know, what we want to point out in addition is, you know, | 09:06AM |
| 16 | we had attorney Martin who, you know, it's our position, was | 09:06AM |
| 17 | representing Defendant Hansen and Defendant Walker at the same | 09:06AM |
| 18 | time.  And so, you know, that was evident in the sense that | 09:06AM |
| 19 | you know, now, you know, they have attorney Han who's now | 09:06AM |
| 20 | representing Defendant Hansen.  But, you know, since the | 09:06AM |
| 21 | indictment, you know, there's multiple layers of the potential | 09:06AM |
| 22 | for conflict of interest to arise. | 09:06AM |
| 23 | At one point, attorney McConwell, and this was | 09:06AM |
| 24 | noted in our filing ECF 416, you know, we have attorney | 09:06AM |
| 25 | McConwell that sought to deregister aircraft with the FAA. | 09:06AM |

1    And what's important to note is these aircraft that he's          09:06AM

2    looking to deregister belong to subsidiaries of Defendant         09:06AM

3    Hansen, again, who at least at one time was being represented     09:07AM

4    by attorney Martin.                                               09:07AM

5              So, you know, we have that potential conflict of        09:07AM

6    interest where attorney McConwell, in essence, representing       09:07AM

7    these Defendant Hansen subsidiaries and trying to deregister      09:07AM

8    these aircraft with the FAA.  We also have Defendant Crowe and    09:07AM

9    Defendant Crowe either has a position and/or role with these      09:07AM

10   Vanuatu subsidiaries.  And the same thing with Defendant          09:07AM

11   Crowe, he sought to deregister aircraft with the FAA, again,      09:07AM

12   creating this potential layer of a conflict, not only with        09:07AM

13   himself, but again, attorney Martin and others.                   09:07AM

14             So, you know, that -- you know, the big thing           09:07AM

15   with the government, Your Honor, bringing this motion is just     09:07AM

16   really having a hearing to ensure that, you know, we point out    09:07AM

17   the concerns that we have and, you know, the different            09:07AM

18   scenarios that we believe that there may be a potential           09:08AM

19   conflict of interest.  And, you know, ultimately, it will be      09:08AM

20   the Court to make that determination if a conflict or not even    09:08AM

21   just an actual conflict but the potential for a conflict          09:08AM

22   exists and that's merely what the government is just trying to    09:08AM

23   do, we have an obligation to bring it to the Court's attention    09:08AM

24   if we feel that there is a potential and that's what we did.      09:08AM

25   And so with those arguments, Your Honor, we submit, unless my     09:08AM

1  co-counsel, SAUSA Miller, has anything else she'd like to add.  09:08AM

2          MS. MILLER:  I do not.  I do not.  Thank you,  09:08AM

3  Your Honor.  Thank you, Stephen.  09:08AM

4          THE COURT:  All right.  Thank you.  Let me begin  09:08AM

5  with Mr. Walker's Counsel, Mr. Martin, you can go ahead and  09:08AM

6  address if you have addition to add other than what's been  09:08AM

7  filed?  09:08AM

8          MR. MARTIN:  Your Honor, I accidentally  09:08AM

9  disconnected myself, so when I picked up, Mr. Leon Guerrero  09:08AM

10  was talking about Hansen and attorney's fees being paid.  09:08AM

11  Anything before then, I didn't hear and I apologize.  I  09:09AM

12  accidentally disconnected, but let me just briefly say my  09:09AM

13  technology, Your Honor, is not that great.  Let me just --  09:09AM

14          THE COURT:  Well, let me just -- I guess, if I  09:09AM

15  can attempt to bring you up to speed, Counsel has just brought  09:09AM

16  up that there in fact exists a joint defense agreement and  09:09AM

17  then the obvious concern about the conflicts.  He referenced  09:09AM

18  Mr. McConwell may be representing subsidiaries of Hansen in  09:09AM

19  attempts at deregistration.  The Court has reviewed those  09:09AM

20  requests, the deregistrations that were filed as exhibits and  09:09AM

21  the conflicts that may be associated with that.  So that's  09:09AM

22  kind of where the government was.  Go ahead, you can then now  09:09AM

23  argue to the Court if you have anything you wish the Court to  09:09AM

24  be aware of other than what's been filed.  09:09AM

25          MR. MARTIN:  Your Honor, very briefly.  I  09:09AM

1   represent John Walker.  I don't represent Hansen, I don't    09:09AM
2   represent anyone else.  My loyalties are to John Walker.  He's    09:10AM
3   aware of that.  He's previously executed a waiver of conflict    09:10AM
4   of interest in this case as relation to all other defendants    09:10AM
5   and on behalf of Hansen, a waiver.  But there's -- I    09:10AM
6   understand -- I've been doing this for a long, long time.  I    09:10AM
7   understand what a conflict is.  And if the government wants to    09:10AM
8   make an offer to us for us to cooperate against them, I'm sure    09:10AM
9   willing to hear them.  I don't think Hansen is going to impact    09:10AM
10  my loyalty or duties to John Walker in any way shape or form    09:10AM
11  if that's a concern of theirs.  I will advise the Court that    09:10AM
12  we all do have a common defense.  Our common defense is we    09:10AM
13  haven't done anything wrong, but that doesn't create a    09:10AM
14  conflict of interest.  I think the issues are clearly set out    09:10AM
15  in the briefs filed by all the parties and I would stand on    09:10AM
16  that, Judge.    09:10AM
17          THE COURT:  All right.  Thank you, Mr. Martin.    09:10AM
18  Let me -- go ahead, I'm sorry.    09:10AM
19          (Pause.)    09:11AM
20          THE COURT:  We may have lost Mr. Martin again.    09:11AM
21          MR. MARTIN:  No, I'm here.  I'm here, Judge.  Can    09:11AM
22  you hear me?    09:11AM
23          THE COURT:  Yes, okay.  Is that it, Mr. Martin?    09:11AM
24          MR. MARTIN:  That's it, and I think my Counsel --    09:11AM
25  my client's on the phone, if you need a waiver from him, he    09:11AM

```
 1   can orally do it and if we need to do another one, we're happy      09:11AM
 2   to do that.                                                         09:11AM
 3              THE COURT:  All right.  Let me just move up the          09:11AM
 4   line.  Mr. Perez, anything on behalf of Mr. Reed?                   09:11AM
 5              MR. PEREZ:  Just briefly, Your Honor.  First, we         09:11AM
 6   join in the opposition filed by co-defendants in Document 415       09:11AM
 7   and 417.  I would just reiterate that my loyalty as Counsel is      09:11AM
 8   to Defendant Reed only.  I would also point out that Mr. Reed       09:11AM
 9   also signed a waiver which was submitted to the Court              09:11AM
10   previously.                                                         09:11AM
11              I would just also submit that the government has         09:11AM
12   made no threshold showing of any conflict and I would also        09:11AM
13   just point out that the issue regarding the conflict based        09:11AM
14   upon payment of fees was raised previously by the government       09:11AM
15   addressed by this Court with Judge Manibusan and was denied       09:11AM
16   back then and this is the same issue that's being raised again    09:12AM
17   and I have nothing further to add other than that.                09:12AM
18              THE COURT:  All right.  Mr. Pole, anything to add       09:12AM
19   on behalf of Mr. Rogers?                                           09:12AM
20              MR. POLE:  Your Honor, I would just add that of         09:12AM
21   course, again, my loyalty is to Mr. Rogers and he's only on       09:12AM
22   one count.  So that even if there was a conflict for the other    09:12AM
23   defendants, which we don't see, it wouldn't be imputed to my      09:12AM
24   client, Your Honor.                                                09:12AM
25              THE COURT:  All right.  On behalf of Mr. Kapp,          09:12AM
```

*Criminal Case No. 18-00010, USA v. Walker, et al.*

1    Mr. McConwell or Tony?                                       09:12AM

2            MR. MCCONWELL:  This is Mr. McConwell, Your          09:12AM

3    Honor.  I join in that.  My loyalty is to Mr. Kapp.  He's also  09:12AM

4    waived any potential conflict.  I do not believe there's a   09:12AM

5    conflict with regard to the administrative matters we've been  09:12AM

6    dealing with, with regard to the FAA enforcement case or the  09:12AM

7    letter, or e-mail that you got from me to another Counsel in  09:12AM

8    this case urging them to go ahead and allow deregistration.  I  09:13AM

9    might point out to you they have blocked every deregistration  09:13AM

10   of aircraft in the registry right now and I think they have  09:13AM

11   something like 58 hold orders, so they're trying to block    09:13AM

12   deregistration by Hansen of the right to deregister their    09:13AM

13   aircraft.  But my client has no objection to the network that  09:13AM

14   I've done for the Vanuatu corporations and has executed the  09:13AM

15   waiver.                                                       09:13AM

16           THE COURT:  All right.  Thank you, Mr. McConwell.    09:13AM

17   On behalf of Mr. Crowe, Mr. Nicolaysen?                      09:13AM

18           MR. NICOLAYSEN:  Yes, thank you, Your Honor, Greg    09:13AM

19   Nicolaysen from Los Angeles speaking on behalf of Mr. Crowe  09:13AM

20   together with my co-Counsel David Lujan.  Your Honor, I ask  09:13AM

21   the Court to take note as our papers mention of the waiver of  09:13AM

22   conflicts filed on February 22nd of 2019, PACER             09:13AM

23   Document 2-0-4.  That waiver resolves any issue of any       09:14AM

24   potential conflict and there certainly was no actual conflict  09:14AM

25   that was being raised by the government in its initial filing  09:14AM

1  back in 2018.  And so looking at February of 2019 forward in    09:14AM

2  time up to the present time, the government has not addressed    09:14AM

3  any circumstance that would suggest that during the period    09:14AM

4  subsequent to the filing of the conflict waivers, which Judge    09:14AM

5  Manibusan accepted, there has been anything to raise divided    09:14AM

6  loyalties or any other type of conflict in regard to the    09:14AM

7  representation of Mr. Crowe.  And in my view, that this is    09:14AM

8  simply, as our papers argue, an effort to delay the trial.    09:14AM

9          In regard to the filing of the amended motion,    09:14AM

10  it's all in our papers, I won't repeat the argument here, but    09:14AM

11  there is certainly no basis for any type of conflict inquiry    09:15AM

12  or even for the filing of a supplemental waiver.  There is no    09:15AM

13  need for any additional waiver in regard to Mr. Crowe.    09:15AM

14          THE COURT:  All right.  Thank you,    09:15AM

15  Mr. Nicolaysen.  I apologize for butchering your name but I    09:15AM

16  think I got it now.    09:15AM

17          MR. NICOLAYSEN:  No, it's fine.    09:15AM

18          THE COURT:  Mr. Han, on behalf of Hansen    09:15AM

19  Helicopters, anything -- because you're -- I guess the amended    09:15AM

20  complaint that is now Hansen formally as a defendant.    09:15AM

21          MR. HAN:  Yes, Your Honor.  Um, nothing else to    09:15AM

22  add except the fact that I'd be loyal to the Hansen    09:15AM

23  Helicopters, the corporation.    09:15AM

24          THE COURT:  All right.  Thank you.    09:15AM

25          MR. LEON GUERRERO:  Your Honor, this is AUSA Leon    09:15AM

1   Guerrero, just a brief rebuttal.                           09:15AM

2              THE COURT:  Okay.  Go ahead.                    09:15AM

3              MR. LEON GUERRERO:  Now, I would say that the,  09:15AM

4   you know, the circumstances have changed and really those 09:15AM

5   waivers that were previously submitted to the Court are   09:15AM

6   outdated because at the time, Defendant Hansen was not a   09:16AM

7   co-defendant in the case.  So I would say that the        09:16AM

8   circumstances have changed and really those -- the initial 09:16AM

9   waivers that were provided to the Court really are no longer 09:16AM

10  pertinent and they're outdated, given the current superseding 09:16AM

11  indictment.                                               09:16AM

12             THE COURT:  All right.                         09:16AM

13             MR. NICOLAYSEN:  Your Honor, on behalf of      09:16AM

14  Mr. Crowe, I'd like to respond since it was in response to my 09:16AM

15  comment.  The government has an obligation to make a prima 09:16AM

16  facie showing that there is a reason to be concerned about a 09:16AM

17  serious potential for conflict or an actual conflict.  The 09:16AM

18  mere fact that the corporate entity was not a defendant at the 09:16AM

19  time the original conflict waivers were filed in February 2019 09:16AM

20  and we now have the corporate defendant in this case, that is 09:16AM

21  not a sufficient change of circumstance to suggest that there 09:16AM

22  are divided loyalties that would warrant further inquiry.  And 09:17AM

23  the government needs to demonstrate that there is some basis 09:17AM

24  for divided loyalties sufficient to conduct further inquiry in 09:17AM

25  camera or otherwise.  If the Court wishes to conduct further 09:17AM

*Criminal Case No. 18-00010, USA v. Walker, et al.*

inquiry, I would recommend that that be done outside the      09:17AM

government's presence and the Court can take oral waivers by      09:17AM

phone at this hearing in an under-seal proceeding and we can      09:17AM

have it resolved now.  I don't think it's necessary, but I      09:17AM

think the defendants would be prepared to do that if the Court      09:17AM

feels that the need has arisen for a supplemental waiver.      09:17AM

     THE COURT:  No, the Court has reviewed the      09:17AM

defendants' briefs and also the arguments with respect to the      09:17AM

nature of the initial investigation and the government's      09:17AM

awareness certainly since 2015 of the involvement of -- well,      09:17AM

the newest defendant, Hansen Helicopters, and that the      09:17AM

investigation really was -- was -- was geared towards them      09:17AM

from the beginning.      09:18AM

     The Court, I think, just needs to remind the      09:18AM

lawyers to, you know, I'm sure the lawyers are aware of their      09:18AM

duty under Rule 1.8 and just make sure that you guys remain in      09:18AM

compliance with the rules and everybody's affirmatively stated      09:18AM

their loyalty to their specific client -- the insistence of a      09:18AM

defense agreement and whether or not compensation may or may      09:18AM

not be coming from -- from -- from persons other than their      09:18AM

client.  So let's just make sure we remain cognizant of that      09:18AM

and remain in compliance with that as well as 1.6 dealing with      09:18AM

confidentiality with respect to your individual client.  Okay?      09:18AM

I don't think the Court needs to be concerned with that.  The      09:18AM

second motion before the Court is -- so the Court will take      09:18AM

1    that matter under advisement and will issue an order as soon    09:18AM

2    as possible.    09:18AM

3                  The other motion before the Court is motion for    09:19AM

4    protective order by the government to schedule an inspection    09:19AM

5    and to prevent harassment of the witnesses.  Again, the Court    09:19AM

6    has reviewed all the documents that have been filed    09:19AM

7    previously.  Mr. Leon Guerrero or Ms. Martin [sic], is there    09:19AM

8    anything the government wishes to add with respect to that    09:19AM

9    motion?    09:19AM

10                  MS. MILLER:  Yes, Your Honor, this is Marie    09:19AM

11    Miller, can you hear me?    09:19AM

12                  THE COURT:  I'm sorry, Ms. Miller, I apologize.    09:19AM

13                  MS. MILLER:  Oh, that's okay.  Can you hear me    09:19AM

14    okay?    09:19AM

15                  MR. MARTIN:  Your Honor, may I interject    09:19AM

16    something first?    09:19AM

17                  THE COURT:  And who is this?    09:19AM

18                  MR. MARTIN:  This is Mr. Martin, Your Honor.  I    09:19AM

19    represent Mr. Walker.  I had a suggestion about this motion if    09:19AM

20    I might interject and then if you want to proceed, that's    09:19AM

21    fine.    09:19AM

22                  THE COURT:  Go ahead.    09:19AM

23                  MR. MARTIN:  That the government has also filed,    09:19AM

24    issued 62 subpoenas for the production of these same identical    09:19AM

25    helicopters addressing almost the same issues, and rather than    09:19AM

being repetitive, I was going to suggest we might set both

arguments for the same time at a later date, because the same

issues will virtually be addressed in those arguments that are

going to be addressed here.  And if the Court wants to

proceed, that's fine, but I wanted to make that suggestion.

            THE COURT:  So Ms. Miller, what is the briefing

period -- I assume, Mr. Martin, you're referring to a motion

to quash the subpoenas then, there's a motion to quash that's

pending; is that correct?

            MR. MARTIN:  That's correct, Your Honor.

            THE COURT:  Does anybody know what the briefing

schedule is for that?  I don't know it off hand.

            MS. MILLER:  Your Honor, there isn't anything

scheduled yet in terms of hearing that motion and the

government does not concede that the Rule 16 motion is the

same as the Rule 17 motion.  Those are two distinct procedural

processes and it is inappropriate to say that they should be

argued and heard at the same time.  The motion for a

protective order is a critical motion that should be heard and

ruled on by the Court as soon as possible and since we have

this hearing time and no one has before now recommended that

we move it and combine it with the Rule 17 motion and I

suggest we do go forward, Your Honor.

            THE COURT:  All right.  Go ahead, Ms. Miller,

then.  Mr. Martin, we'll hear the argument and go from there.

| | |
|---|---|
| 1 | MS. MILLER:  Thank you, Your Honor.  So I know | 09:21AM |
| 2 | Your Honor does not want to hear anything that has already | 09:21AM |
| 3 | been previously filed.  I will however bring something to the | 09:21AM |
| 4 | Court's attention that the Court may not be fully aware of: | 09:21AM |
| 5 | Number one, the FAA has tried to inspect these | 09:21AM |
| 6 | helicopters 29 times.  There are 29 letters that have gone | 09:21AM |
| 7 | from the FAA to the defendants seeking repeatedly to inspect | 09:21AM |
| 8 | these helicopters to ensure that they are safe and air-worthy. | 09:21AM |
| 9 | One of those requests was on Helicopter N No. | 09:21AM |
| 10 | 9068-F, as in Frank.  And that particular aircraft was one | 09:22AM |
| 11 | that crashed and killed a pilot on September 3rd of 2015.  And | 09:22AM |
| 12 | the defendants continue to refuse to produce the helicopters | 09:22AM |
| 13 | for inspection by the FAA for years, making numerous excuses | 09:22AM |
| 14 | similar to the excuses that they made in response to the | 09:22AM |
| 15 | government's motion here, that it would be too difficult to | 09:22AM |
| 16 | pull the helicopters in, that it is too challenging, that is | 09:22AM |
| 17 | it would cost them too much money, and our response is, too | 09:22AM |
| 18 | bad.  The defendants actually are the ones who sought the | 09:22AM |
| 19 | registration of all of these helicopters by the FAA.  And when | 09:22AM |
| 20 | they sought that registration by the FAA, they certified under | 09:22AM |
| 21 | penalty of perjury that they were seeking the registration to | 09:22AM |
| 22 | comply with all of the FAA rules and conditions, and since | 09:23AM |
| 23 | then, they have done anything but comply with those rules and | 09:23AM |
| 24 | conditions. | 09:23AM |
| 25 | In this particular case, Your Honor, there has | 09:23AM |

1  been a plea agreement entered into by an FAA inspector who

2  admitted to his role in the honest services fraud and his role

3  in issuing 30 airworthiness certificates, 3-0, to these

4  defendants, without having actually conducted a proper

5  inspection of either the aircraft or the legitimate paperwork

6  tied to the aircraft.

7         Another thing that Your Honor hasn't seen in the

8  pleadings is that there have been nine deaths associated with

9  Hansen-owned helicopters, six serious injuries associated with

10 Hansen-owned and -operated helicopters.  We know that the

11 defendants have, "deregistered" and "reregistered" aircraft in

12 the Philippines before.

13        For example, Your Honor, one of the aircraft,

14 N369TG, Mr. Crowe said that Echo Air owned that aircraft.

15 Echo Air is one of the numerous Vanuatu corporations created

16 by the defendants for, according to them, insurance purposes.

17 And despite the fact that Mr. Crowe indicated to the FAA that

18 that aircraft is owned by Hansen outright and, therefore,

19 Hansen has the right to deregister it and to reregister it in

20 the Philippines, the FAA also has certification from Venezuela

21 that that identical aircraft is registered there by a third

22 party.  Every single helicopter was registered with the FAA.

23 And another example is N444GJ.  Every single request for

24 paperwork regarding that aircraft, even though it was

25 allegedly a Vanuatu-owned aircraft, the defendants asked that

1  all that paperwork be sent to Guam and this is something that        09:25AM

2  they've done over and over and over again.                           09:25AM

3            We have a letter that we produced to you, Your             09:25AM

4  Honor, from the Philippines, indicating -- not only from the         09:25AM

5  Philippines by the way, Your Honor, from Vanuatu, from               09:25AM

6  Palawan, confirming that the aircraft that the defendants            09:25AM

7  ostensively deregistered here to reregister there were never         09:25AM

8  in fact registered or their registrations were allowed to fail       09:25AM

9  in the case of the Philippines.                                      09:25AM

10           I submitted to the Court yesterday an exhibit              09:25AM

11 just to show you and to provide you with an example of just          09:26AM

12 how outrageous the defendants' conduct is in relation to this        09:26AM

13 particular case.  The defendants submitted an exhibit in             09:26AM

14 support of their motion to dismiss that the defendants               09:26AM

15 represented was an exhibit relating to aircraft N831FG.  But         09:26AM

16 what the defendants did was they only submitted to the Court         09:26AM

17 part of the file on N831FG.  They submitted an export letter         09:26AM

18 requesting deregistration of that aircraft.  They submitted a        09:26AM

19 deregistration confirmation.  They submitted a letter from the       09:26AM

20 FAA registering the aircraft after the export request and then       09:26AM

21 the registration from the FAA.  What they did not submit to          09:26AM

22 this Court was a statement of the whereabouts of that aircraft       09:26AM

23 showing that that aircraft never left Guam, despite the              09:27AM

24 representations to the government that it was being exported.        09:27AM

25 What they didn't produce to the Court was a letter from             09:27AM

1  Mr. Walker requesting the FAA registration after that aircraft  09:27AM

2  was supposedly exported but we know it was never exported, nor  09:27AM

3  did they produce to the Court another letter to the FAA,  09:27AM

4  indicating that they were waiting for Vanuatu to confirm that  09:27AM

5  the helicopter was never registered there and then they also  09:27AM

6  didn't produce to the Court the Vanuatu confirmation that the  09:27AM

7  aircraft was never registered there.  We have letters from the  09:27AM

8  defendants going to the FAA over the last ten years, talking  09:27AM

9  about aircraft being exported, then saying, no, we never  09:27AM

10  exported this aircraft, and meanwhile, the aircraft is in  09:27AM

11  registration limbo, but we know, based on the information we  09:28AM

12  received from the defendants, that these helicopters are  09:28AM

13  making them millions of dollars a year, despite the fact that  09:28AM

14  they have not been properly inspected.  09:28AM

15          Finally, Your Honor, they want to ostensively  09:28AM

16  remove the aircraft to the Philippines but we also produced a  09:28AM

17  document for you from the Philippines referring to the  09:28AM

18  defendants' utter defiance of civil aviation law and disregard  09:28AM

19  of their responsibilities to the Philippines equivalent of the  09:28AM

20  FAA as they have here.  09:28AM

21          Your Honor, you have the authority under Rule 16  09:28AM

22  of the Federal Rules of Criminal Procedure to enter a  09:28AM

23  protective order to allow the inspection of these helicopters  09:28AM

24  and also to assure that they are not deregistered and not  09:28AM

25  moved outside of the jurisdiction of the United States.  When  09:28AM

1  you consider what has happened in this case and how the  09:29AM

2  defendants have repeatedly, repeatedly lied to the FAA and  09:29AM

3  misrepresented and they are still using these helicopters to  09:29AM

4  transport pilots and mechanics, putting all these individuals  09:29AM

5  in danger, we ask this Court to exercise your jurisdiction  09:29AM

6  under the rule and under the case law that we cited to grant  09:29AM

7  the motion for a protective order, to require the defendants  09:29AM

8  to finally bring these helicopters back to Guam for a proper  09:29AM

9  inspection by the government and to make them available to the  09:29AM

10  government.  And I don't wish to add anything else other than  09:29AM

11  what was already previously filed with the Court regarding the  09:29AM

12  witness tampering, any other issues.  Thank you, Your Honor.  09:29AM

13          THE COURT:  All right.  Let's -- Mr. Martin, on  09:29AM

14  behalf of Mr. Walker?  09:29AM

15          MR. MARTIN:  Yes, Your Honor, thank you very  09:30AM

16  much.  Your Honor, I'm not sure that the government  09:30AM

17  understands the purpose of Rule 16 discovery.  They asked for  09:30AM

18  discovery in this criminal case.  They don't represent the  09:30AM

19  Department of Transportation, they don't represent the FAA,  09:30AM

20  they don't represent the Federal Bureau of Investigation, they  09:30AM

21  don't represent Mr. Cislo, who's their star witness that they  09:30AM

22  talk about in this case.  Their one -- their alleged purpose  09:30AM

23  for this is for safety and airworthiness and they talk about  09:30AM

24  29 letters that have been sent ten years ago before I was even  09:30AM

25  involved in this case.  They admit they sent me one letter  09:30AM

1    that was attached to my motion.  I believe it was                 09:30AM

2    December 12th saying, "Please tell us when we can inspect          09:30AM

3    these helicopters" and I responded to the letter, I asked them     09:30AM

4    to tell me what authority they had to do that.  I said if you      09:30AM

5    got a problem with it, we'll take it up with Judge Gatewood or     09:30AM

6    call me on the phone.  Neither one of those occurred.  They        09:31AM

7    didn't call me, we didn't take it up with Judge Gatewood.  I       09:31AM

8    figured they realized that they didn't have the authority to      09:31AM

9    do that, so we went on.                                            09:31AM

10            Secondly, they talk about the case law in support         09:31AM

11   of their motion for protective order.  They cited no case law,    09:31AM

12   Your Honor.  Rule 16 doesn't -- the way I read the rule,          09:31AM

13   doesn't give the government the authority to come in and          09:31AM

14   inspect evidence that -- for materials that -- in a case,          09:31AM

15   unless we're going to use it and I, in my motion said, we're      09:31AM

16   not going to produce any helicopters, we're not going to use      09:31AM

17   any helicopters at trial so we shouldn't -- we shouldn't          09:31AM

18   produce it.                                                        09:31AM

19            Thirdly, Your Honor, the thing that offends me            09:31AM

20   the most, and I use that word very lightly, is the personal       09:31AM

21   attacks on lawyers.  The government has misrepresented in          09:31AM

22   their motions things that my co-Counsel have been involved in,    09:31AM

23   in this case.  In particular, in reference to Mr. Cislo, they     09:32AM

24   make blatant allegations that Mr. McConwell confronted and        09:32AM

25   accosted Mr. Cislo, which did not occur.  The government          09:32AM

1    finally in January provided to us a 302 that's been identified    09:32AM
2    as FBI Hansen Document No. 046383, where during a proffer    09:32AM
3    session, the government alleged that Mr. McConwell confronted    09:32AM
4    him inside his hangar.  Mr. Cislo, and I'm reading from the    09:32AM
5    FBI 302 itself now, says "On Saturday, July 14th, a male    09:32AM
6    individual initiated contact with Cislo outside, outside of    09:32AM
7    his private hangar."  I made representations to the Court, as    09:32AM
8    an officer of the Court, quite honestly, what occurred by mere    09:32AM
9    happenstance on July 14th, and for them to make some type of    09:33AM
10   outrageous allegations that he tried to talk to him and he    09:33AM
11   tried to confront him about the case, he didn't intimidate him    09:33AM
12   at all, Your Honor.  Mr. Cislo doesn't say that.  Mr. Cislo    09:33AM
13   says -- even mentions that Mr. McConwell advised him that he    09:33AM
14   attempted to contact Cislo's attorney, they did not receive a    09:33AM
15   reply, consistent with exactly what I put in the motion, Your    09:33AM
16   Honor.  No Counsel in this case has done anything    09:33AM
17   inappropriate.  And I find it kind of offensive that the    09:33AM
18   government would allege that there's something done    09:33AM
19   inappropriate by any Counsel.  There's no basis for a    09:33AM
20   protective order.  We all know the rules of ethics in this    09:33AM
21   case just like we know the rules relating to a conflict of    09:33AM
22   interest.  I ask the Court to deny the government's motion,    09:33AM
23   Your Honor.    09:33AM
24             THE COURT:  All right.  Thank you, Mr. Martin.    09:33AM
25   Mr. Nicolaysen, anything to add?    09:33AM

1    MR. NICOLAYSEN:  Yes, Your Honor.  Thank you.    09:33AM

2    Rule 16 is a very narrow and specific rule in criminal    09:34AM

3    proceedings.  It deals with discovery by both sides.  The    09:34AM

4    issuance of protective orders provide restrictions under    09:34AM

5    Rule 16 that focus on the production of information by the    09:34AM

6    government typically by which parameters are being established    09:34AM

7    regarding the use of such evidence by the parties and we have    09:34AM

8    these protective orders in gang cases, identity theft cases,    09:34AM

9    etc., which is all about regulating how evidence is going to    09:34AM

10   be managed and used by the parties.    09:34AM

11       When the government seeks a protective order with    09:34AM

12   respect to the defense, that protective order under Rule 16    09:34AM

13   must be tailored to defense evidence.  That's not what's    09:34AM

14   happening here.  I'll give an example.  If the defendants    09:34AM

15   designated as a trial exhibit, a particular FAA-approved part    09:34AM

16   that was used on the helicopters during the time period of the    09:35AM

17   indictment, 2012 up to May 2018 when the first indictment was    09:35AM

18   filed, and we are going to be having testimony at trial    09:35AM

19   regarding that part, part of our presentation regarding    09:35AM

20   helicopters, then the Court would be well within its rights    09:35AM

21   and the government likewise, to direct the defense to make    09:35AM

22   that part available for inspection because that part is now    09:35AM

23   being designated by the defense as a trial exhibit.  Now    09:35AM

24   that's not happening -- the defense is not going to be    09:35AM

25   designating helicopters as defense exhibits.  That's just not    09:35AM

1   going to happen.  And therefore, the helicopters, which are                09:35AM

2   the subject of this motion, do not fall within the purview of               09:35AM

3   Rule 16.  They are not reciprocal discovery from the defense                09:35AM

4   to the government and the Court cannot issue any protective                 09:35AM

5   orders with regard to those helicopters because those                       09:36AM

6   helicopters simply don't fall within the parameters of Rule 16              09:36AM

7   and the government has made it clear in its filings, and as                 09:36AM

8   recently as yesterday in Document 460, that their motion for                09:36AM

9   protective order is being brought under Rule 16.  It's                      09:36AM

10  referred to as, "the government's Rule 16 motion."  So                      09:36AM

11  therefore, the request by the government for (background                    09:36AM

12  noise) to inspect the helicopters, order directing Hansen not               09:36AM

13  to transfer these helicopters as part of some sort of a                     09:36AM

14  protective order, all of that has to be justified within the               09:36AM

15  very narrow and specific criteria of Rule 16, and because the               09:36AM

16  helicopters don't fall within Rule 16, they are not reciprocal              09:36AM

17  discovery, they are not going to be trial exhibits, this                    09:36AM

18  Court, and I say this with respect, has no authority to order               09:36AM

19  any inspection.  And what the government is doing, is arguing               09:36AM

20  its case as if it were before an administrative body.  Marie                09:37AM

21  Miller is from the Department of Transportation, she's well                 09:37AM

22  versed in FAA administrative procedures and the arguments that              09:37AM

23  she has presented here, which pertain to which she considers                09:37AM

24  safety issues, that there have been numerous requests to                    09:37AM

25  inspect, that in her judgment have been ignored, and so on all              09:37AM

1    of that, goes to the issue of the FAA and the regulatory

2    agency having the authority to suspend or revoke

3    registrations, suspend or revoke airworthiness certificates.

4    That's the power of a regulatory agency, same thing with the

5    FDA over a drug company, the ACF over a gun manufacturer and

6    so on.  The arguments presented by Ms. Miller are suited for

7    the administrative environment where Hansen or whoever would

8    be, you know, deemed the appropriate owner of the helicopters,

9    would be subject to some administrative sanction for failing

10   to satisfy the safety and other obligations including making

11   the helicopters available for inspection.  That's an

12   administrative issue.  That has nothing at all to do with the

13   criminal proceeding or the narrow criteria under Rule 16.  And

14   I should emphasize that these helicopters, the vast majority

15   of the ones that's listed in the superseding indictment, which

16   for round numbers -- let's just use the number sixty, the vast

17   majority of these helicopters have valid registrations and

18   valid airworthiness certificates.  In fact, registrations have

19   three-year time tables and if Your Honor goes to www.faa.gov

20   and you have the superseding indictment in front of Your Honor

21   that has the table and all of these N numbers of the sixty

22   helicopters and you just start typing these N numbers into the

23   search engine on the home page, you'll get the profile of the

24   helicopters and you will see that the vast majority of them

25   have valid registrations.  Well, in fact, valid registrations

that expire either this year, 2021, even 2022. That means the

FAA has been renewing these registrations during the period of

the investigation of this case which goes back at least to

2015 and earlier, and during the prosecution of this case.

So when the government complains, as it does,

that the helicopters are unsafe, and that we have refused

inspections, those administrative arguments should be directed

to the FAA as part of a claim that maybe the registrations

should not have been renewed, maybe they should be suspended

or revoked. But this is a motion under Rule 16 and none of

the arguments the government has presented in its papers or

here today orally have any relevance whatsoever to Rule 16.

Let me just close by speaking about the

chronology of the superseding indictment. If Your Honor goes

through the superseding indictment with an eye to the time

periods of the different counts, and if the Court please, I'll

be glad to do it, I have yellow highlighted it so I could

recite all the paragraphs in the superseding indictment. Your

Honor will see that the government has consistently framed the

chronology of this prosecution from year 2012 up through May

of 2018, which is the doorstep of the filing of the initial

indictment, which was filed on May 31, 2018.

The superseding indictment, which was filed in

December 2019, a year and a half later, has one substantive

count that has to do with registrations that they claim was,

you know, improperly done on June 10th of 2018, a couple of
weeks after the first indictment.  But other than that one
ministerial charge, the entire superseding indictment is based
on the same chronology as the original indictment, which
doesn't go beyond May of 2018, and of course we are now in May
of 2020, two years later.

So the government cannot properly argue that
there is anything about the current helicopters that are
flying that has any relevance to the charges in the
indictment.  There is no allegation of continuity of
misconduct, or that the charged conspiracy are ongoing
conspiracies.  It'd be very different in a RICO case.  We've
all seen RICO cases where, let's just use a gang or a mafia
family where the defendants are on trial as members of a RICO
enterprise that is still in existence through the ongoing
prosecution and all the way up through a trial.  And so when
the mob family bosses in New York are on trial for being a
member of -- you know, being a leader of the Gambino family,
while they're in trial and while the prosecution is ongoing,
the RICO enterprise is considered to be still active.  And so
it's still ongoing criminal activities.  That's one of the key
centers between RICO and conspiracy.  Conspiracy, as we see in
this case, has bookends; it has a beginning and an end.  And
it's critical to recognize that the government is seeking to
have Court orders issued for inspections that the Court is not

09:41AM
09:41AM
09:41AM
09:41AM
09:41AM
09:41AM
09:41AM
09:41AM
09:41AM
09:41AM
09:41AM
09:41AM
09:41AM
09:41AM
09:41AM
09:42AM
09:42AM
09:42AM
09:42AM
09:42AM
09:42AM
09:42AM
09:42AM
09:42AM
09:42AM

authorized to issue, but the government is misunderstanding

that today's helicopters have nothing to do with the time

frame of the charge, because there's no allegation of any

continuity of misconduct, that there's any crime being

committed in 2020 that is relevant to the charge in this case,

unless the government is planning to supersede.  And if they

are, I ask the government through Your Honor, tell us now so

that we understand that; otherwise, based on chronology alone,

the concept of inspection is completely irrelevant because of

the two-year lapse between May of 2018 when the indictment

charges them and May of 2020, which is where we are today.

Those are my arguments to Your Honor and I would ask that the

government's motion be denied.

THE COURT:  All right.  Mr. Perez or

Mr. McConwell on behalf of Defendant Kapp, anything to add?

MR. PEREZ:  Your Honor, I join in the opposition

of 422, 424, 428 and 434 and we rest on those as well as the

oral arguments presented by Mr. Martin and Mr. Nicolaysen.

MR. MCCONWELL:  This is Edward McConwell, Your

Honor, if I could respond a little bit here.  I could respond

to everything that Ms. Miller said and believe me, she's only

told you a fraction of the story in this matter.  There is

issues that she just brushed over and not given you the whole

story.

One example you may not be aware of, but there's

1   a motion to dismiss on lack of jurisdiction that's pending          09:44AM

2   right now, it's been filed before the Court dealing with the         09:44AM

3   validity or invalidity of the airworthiness cert -- or the           09:44AM

4   registration certificates themselves.                                09:44AM

5           MR. MILLER:  Your Honor, I'm sorry to interrupt              09:44AM

6   but I'm going to object to Mr. McConwell arguing anything            09:44AM

7   relating to the motion to dismiss.  I didn't ignore it.  We're       09:44AM

8   not here to argue it.                                                09:44AM

9           THE COURT:  All right.                                       09:44AM

10          MR. MCCONWELL:  I'm bringing the matter to the               09:44AM

11  Court's attention.  I wasn't going to argue it, but I do want        09:44AM

12  to give one example of something she did bring up that is very       09:44AM

13  important in this case.  She highlights 9068 Fox Trot.  Now,         09:44AM

14  that's an aircraft that had an accident in September of 2015         09:44AM

15  and the Court -- the FAA was aware as of that time and               09:45AM

16  actually back in April of 2015 of an issue with regard to the       09:45AM

17  validity or invalidity to the aircraft registrations.  They         09:45AM

18  acknowledged in their search warrant affidavit with regard to       09:45AM

19  the search warrant that was issued from Guam by Judge               09:45AM

20  Manibusan that 9068 Fox Trot was registered in the Philippines      09:45AM

21  and because of that, and because of international law, that          09:45AM

22  was an invalid registration, and at that point, absolutely          09:45AM

23  knew they did not have jurisdiction over that aircraft, yet         09:45AM

24  they plowed ahead and ignored the fact they didn't have            09:45AM

25  jurisdiction with regard to that aircraft and the                   09:45AM

investigation that ensued from that, but it goes to the entire

line of Vanuatu corporations.  They were totally aware of the

existence of them, the number and that they were foreign

corporations.  That is implications that we'll be dealing with

later.  I'm not going to go through everything she said.

There is a different story.  There's more evidence that would

be -- would neutralize the thing that she said and we could

explain it to you, but it would take too long to do that.

But I do want to go back to the Mr. Cislo thing

at the airport.  Mr. Cislo did not tell the truth to the FBI

agents and that was an accidental meeting that occurred.  We

had no idea that he was going to even be there, didn't even

knew he was.  But for the way that has been misrepresented to

the Court is very offensive and Mr. Martin's already spoke on

my behalf and that's all I'm going to say about that, but I

join in the pleadings that have been filed in this matter and

ask that the motion for protective order be denied.

And I do have my question for you, my

understanding, and I've been doing this for over 50 years,

that a lawyer has the ability to be able to interview

witnesses that are identified by the government or the

plaintiff or the adverse party.  The government seems to say

that we can't do that and our clients are not supposed to by

their conditions of release, but the lawyers and we have

ethical standards we have to follow, that we've done nothing

1  wrong and there seems -- seems to say we did and I'd like to  09:47AM

2  know whether we are allowed to interview witnesses.  I will  09:47AM

3  tell you that I had one witness in this case say that he was  09:47AM

4  told not to talk to anybody, including their lawyers, and that  09:47AM

5  appeared to come from the government.  09:47AM

6       THE COURT:  All right.  Thank you, Mr. McConwell.  09:47AM

7  Mr. Pete Perez, Jr., on behalf Mr. Reed?  Anything?  09:47AM

8       MR. PEREZ:  No, Your Honor.  09:47AM

9       THE COURT:  All right.  Mr. Pole, on behalf of  09:47AM

10  anything -- Mr. Rogers, anything you wish to add?  09:47AM

11       MR. POLE:  Your Honor, just two things, one, we  09:47AM

12  continue to object and have objected to the government's  09:48AM

13  painting the defendants as being -- all defendants being in  09:48AM

14  control of the helicopters.  As we have pointed out and it's  09:48AM

15  as well clear from the superseding indictment, Mr. Randy  09:48AM

16  Rogers has no authority over those helicopters and has nothing  09:48AM

17  to do with those helicopters and shouldn't be painted with a  09:48AM

18  stroke as the government is trying to do here or in trial.  09:48AM

19       The only other thing I'd like to point out, Your  09:48AM

20  Honor, obviously while we join with all other defendants in  09:48AM

21  the motion, we're primarily concerned with the issue of the  09:48AM

22  right to interview witnesses and I just wanted to point out  09:48AM

23  that one of the cases that was cited was *United States versus*  09:48AM

24  *Brumel-Alvarez,* which is 991 F.2d 1452, and the reason I want  09:48AM

25  to point out is that was decided by the Ninth Circuit in 1993  09:48AM

1    that found a *Brady* violation where the government failed to          09:48AM

2    provide a DEA memo about one of their star witnesses on --             09:49AM

3    asking for the truth and I just want to point out that even            09:49AM

4    though that was 1993 and therefore before the U.S. Supreme             09:49AM

5    Court in *Kyles v. Whitley*, 514 U.S. 419, which wasn't decided        09:49AM

6    until 1995, that case is still consistent with the U.S.                09:49AM

7    Supreme Court that said that issues of *Brady* must be provided        09:49AM

8    to defense Counsel and is not that it is grounds for                   09:49AM

9    dismissal.  I think -- but we absolutely have a right to               09:49AM

10   interview witnesses to receive information and the government          09:49AM

11   provided nothing to suggest that even if this Court has the            09:49AM

12   right to sanction one defense attorney for alleged misconduct,         09:49AM

13   that it would have a right to sanction all defense attorneys           09:49AM

14   for the same misconduct and not allow for a proper defense,            09:49AM

15   that is, the interviewing of witnesses.  I have nothing                09:49AM

16   further to add, Your Honor.                                            09:49AM

17            THE COURT:  Thank you, Mr. Pole.  Mr. Han,                    09:49AM

18   anything on behalf of Hansen Helicopters other than what's            09:50AM

19   been argued?                                                           09:50AM

20            MR. HAN:  Nothing to add, Your Honor.                         09:50AM

21            THE COURT:  All right.  Ms. Miller, briefly in                09:50AM

22   response to the arguments you heard from defense.                      09:50AM

23            MS. MILLER:  Yes, Your Honor.  First of all,                  09:50AM

24   Mr. Martin actually said the letters that the government sent          09:50AM

25   to us were ten years old, that's absolutely not true.  We have        09:50AM

been sending them letters as recently as last year requesting 09:50AM

inspection of these helicopters.  I have letters dated April 09:50AM

29, 2015, June 23, 2015, July 8, 2015, then we can 09:50AM

fast-forward to May 20, 2016, July 20, 2016.  Let's move 09:50AM

ahead, May 14, 2018, July 2nd, 2019.  I can go on and on, Your 09:50AM

Honor, but the point is that is absolutely a misstatement of 09:50AM

fact. 09:51AM

        The second thing is, Mr. Martin said that the 09:51AM

government doesn't understand Rule 16 and I would disagree 09:51AM

with that and I would also state the defense Counsel has 09:51AM

basically just kind of skirted over the explicit language of 09:51AM

Rule 16 which says that this Court has the authority to 09:51AM

require the defendant to permit inspection by the government 09:51AM

of tangible objects and it's not only those objects that the 09:51AM

defendant intends to use in its case in chief because, again, 09:51AM

a third misstatement by defense Counsel, which is that the 09:51AM

government cited -- case law, the government did cite 09:51AM

substantial case law to support its position, including case 09:51AM

law that indicates that if the defendant intends to 09:51AM

cross-examine any of the government's witnesses in a criminal 09:51AM

case regarding evidence, that the government is entitled to 09:52AM

view that evidence.  It is not a violation of the defendant's 09:52AM

Fifth Amendment privilege against self-incrimination and it is 09:52AM

not necessary that the defendants use that evidence in their 09:52AM

case in chief.  And all that case law was cited by the 09:52AM

1    government to the Court, so I won't repeat it, but it is just          09:52AM
2    completely ridiculous for defense to make that statement that         09:52AM
3    no case law was cited.                                                09:52AM
4            The fourth thing, Your Honor, is I understand                 09:52AM
5    very well the distinction between administrative proceeding           09:52AM
6    and a civil proceeding.  As a matter of fact, it's going to be        09:52AM
7    really interesting to hear what the defendants have to say            09:52AM
8    when they turn around and argue that administrative                   09:52AM
9    proceedings are the most meaningful thing for the Court to            09:52AM
10   consider, but in this case, yes, I'm an attorney with the DOT         09:52AM
11   OIG.  I'm also a former federal prosecutor with extensive             09:52AM
12   experience in conspiracy cases.                                       09:53AM
13           And the fifth issue that I'd like to address as               09:53AM
14   an experienced federal prosecutor is, a conspiracy is not             09:53AM
15   completed until its abandoned.  We don't have to supersede in         09:53AM
16   order to argue, and we will argue, so all of the defense              09:53AM
17   Counsel need to be put on notice right now, it's the                  09:53AM
18   government's contention that this conspiracy has not ended,           09:53AM
19   the conspiracy has continued.                                        09:53AM
20           As a matter of fact, immediately after the                   09:53AM
21   indictment, the first indictment in this case, there was             09:53AM
22   another accident by one of these helicopters that the                09:53AM
23   defendants owned and that the defendants have refused to allow       09:53AM
24   to be inspected.                                                     09:53AM
25           The sixth thing I want to address is the Cislo              09:53AM

issue.  This actually relates to the conflict of interest
motion that was filed, Your Honor.  If Mr. McConwell is
calling Mr. Cislo a liar and saying that he did not disclose
their interaction with each other truthfully to the FBI
agent, then again, I want to put Mr. McConwell on notice that
he will be called as a witness to testify under oath about
where that meeting took place, when that meeting took place,
what was said during the course of that meeting, because Mr.
Cislo has confirmed for us that Mr. McConwell specifically
told him that he should not be talking to him, he knew he
shouldn't be talking to him, but he was still talking with him
and Mr. Cislo said he felt intimidated.

        So to address the last point that Mr. Rogers'
Counsel brought up, the government isn't indicating in any way
shape or form that the defense cannot talk to witnesses or
understand what they're going to say.  What we are indicating
is that it is inappropriate and a violation of law to
intimidate witnesses, number one, and number two, to offer to
pay attorney's fees for witnesses because that is unduly
influencing a witness and it goes into tampering with
witnesses and that is what we object to.  I have nothing
further to say, Your Honor.  Thank you.

        MR. NICOLAYSEN:  Your Honor, I'll be happy to
respond.  This is Greg Nicolaysen on behalf of Defendant --

        MS. MILLER:  No, Your Honor, I'm going to object

```
1  to Counsel responding.  The way these arguments go is, we        09:55AM
2  filed the motion --                                              09:55AM
3           THE COURT:  That's fine.  Ms. Miller, that's all        09:55AM
4  right.  All right.  The Court has heard enough.  The Court       09:55AM
5  will take the matters under advisement, will issue its          09:55AM
6  recommendation and decision as soon as possible.                09:55AM
7           MS. MILLER:  Thank you, Your Honor.                     09:55AM
8           THE COURT:  Thank you everybody.                        09:55AM
9           (Proceedings concluded at 9:55 a.m.)                    09:55AM
10                         * * *
11  ---------------------------------------------
12           CERTIFICATE OF OFFICIAL REPORTER
13
14  CITY OF HAGATNA            )
                              )  ss.
15  TERRITORY OF GUAM          )
16
17      I, Veronica F. Flores, Official Court Reporter for
18  the United States District Court of Guam, do hereby certify
19  the foregoing pages, 1 to 38, to be a true and correct
20  transcript of the proceedings held in the above-entitled
21  matter to the best of my ability.
22      Dated this 11th day of May 2020.
23
24                    /s/Veronica F. Flores
                      Veronica F. Flores
25
```

*Criminal Case No. 18-00010, USA v. Walker, et al.*