IN THE DISTRICT COURT OF GUAM

TERRITORY OF GUAM


UNITED STATES OF AMERICA,      ) Criminal Case No. 18-00010
                               )
                  Plaintiff,   )
                               )
          vs.                  )
                               )
JOHN D. WALKER, et al.,        )
                               )
_____  Defendants.  )


TRIAL TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE FRANCES TYDINGCO-GATEWOOD,
CHIEF JUDGE
MARCH 8, 2022; 9:24 A.M.
HAGATNA, GUAM


**JURY TRIAL**

**(EXCERPT RE MOTION TO DISQUALIFY)**


Proceedings recorded *by certified stenographer, transcript
produced by computer.*

Veronica F. Flores, CSR-RPR
Official Court Reporter
520 W. Soledad Avenue
Hagatna, Guam 96910

APPEARANCES


Appearing on behalf of plaintiff:


**OFFICE OF THE UNITED STATES ATTORNEY**
**BY: MARIE MILLER, SAUSA,**
**SAMANTHA MILLER, SAUSA,**
**STEPHEN LEON GUERRERO, AUSA**
Suite 500, Sirena Plaza
108 Hernan Cortez Avenue
Hagatna, Guam 96910
(671) 472-7332


Appearing on behalf of Defendant Walker:

**MARTIN LAW OFFICE**
**BY: MACK K. MARTIN, ESQ.**
125 Park Avenue, 5th Floor
Oklahoma City, OK 73102
(405) 236-8888


**LAW OFFICE OF JAMES M. MAHER**
**BY: JAMES M. MAHER, ESQ.**
238 Archbishop Flores Street
Suite 300, DNA Building
Hagatna, Guam 96910
(671) 477-7892


Appearing on behalf of Defendant Crowe:

**LAW OFFICE OF LUJAN & WOLFF**
**BY: DAVID J. LUJAN, ESQ.**
238 Archbishop Flores Street
300 DNA Building
Hagatna, Guam 96910
(671) 477-8064

Appearing on behalf of Defendant Kapp:

**MCCONWELL LAW OFFICES**
**BY: EDWARD A. MCCONWELL, SR., ESQ.**
**LAURA MCCONWELL, ESQ.**
5201 Johnson Drive, Suite 300
Mission, KS 66205
(913) 262-0605

**LAW OFFICE OF ANTHONY C. PEREZ**
**BY: ANTHONY C. PEREZ, ESQ.**
238 Archbishop Flores Street
Suite 802, DNA Building
Hagatna, Guam 96910
(671) 475-5055


Appearing on behalf of Defendant Hansen:

**LAW OFFICE OF EDWARD C. HAN**
**BY: EDWARD C. HAN, ESQ.**
238 Archbishop Flores Street
DNA Building, Suite 802
Hagatna, Guam 96910
(671) 477-5055

ALSO PRESENT:

John D. Walker, Defendant

Kenneth R. Crowe, Defendant

Phillip T. Kapp, Defendant

Leilani Lujan, FPD

1        March 8, 2022; 9:24 a.m.; Hagatna, Guam

2                              * * *

3                  (Beginning of excerpt.)

4            THE COURT:  Is everybody here?  All the Counsels

5    are present?  All parties -- are all the defendants are

6    present right now?  Okay.  And we're outside the presence of

7    the jury, which I have ordered that they not be in the

8    courtroom at this time.  Okay.  Go ahead and call the case up,

9    please.

10           THE CLERK:  Criminal case No. 18-00010, *United*

11   *States of America v. John D. Walker, Kenneth R. Crowe, and*

12   *Phillip T. Kapp and Hansen Helicopters*; Jury Trial.

13           Counsel, please state your appearances, starting

14   with the government.

15           MR. LEON GUERRERO:  Buenas and Hafa Adai, Your

16   Honor, Stephen Leon Guerrero on behalf of the United States.

17   Also present are Special Assistant Attorneys Marie Miller and

18   Samantha Miller.

19           MS. M. MILLER:  Hafa adai, Your Honor.

20           THE COURT:  Hafa adai, ladies and Mr. Leon

21   Guerrero.

22           MR. MARTIN:  Mack Martin, Your Honor, on behalf

23   of Mr. Walker.  And also with me is local Counsel, James

24   Maher.  Good morning.

25           THE COURT:  Good morning, Mr. Maher, Mr. Walker

1    and Mr. Martin.  Okay, very well.

2                    MR. LUJAN:  Good morning, Your Honor.  David

3    Lujan and I'm with Mr. Crowe.

4                    THE COURT:  Okay.  Good morning, Mr. Lujan and

5    Mr. Crowe.

6                    DEFENDANT CROWE:  Good morning.

7                    MR. MCCONWELL:  Good morning, Your Honor, Edward

8    McConwell, Laura McConwell, Anthony Perez and Mr. Kapp is also

9    present.

10                   THE COURT:  All right.  Good morning,

11   Mr. McConwell, Mr. Perez, Ms. McConwell and...Kapp, Kapp.

12   Okay, all right, Mr. Kapp.  Sorry, there we go.  Thank you

13   everyone, welcome back to Guam.  Oh, and Mr. Han.

14                   MR. HAN:  Don't forget me, Your Honor.  Morning,

15   Your Honor.

16                   THE COURT:  You're unforgettable.  You're

17   unforgettable, Mr. Han.  Go ahead.

18                   MR. HAN:  Edward Han for Hansen Helicopters.

19                   THE COURT:  Okay, very well.  So we have all the

20   Counsels present.  Okay, it's been a busy -- busy couple weeks

21   since I last saw all of you.  Uh-huh.  Sounds like there is

22   some serious motion before the Court.  And I need to get that

23   taken care of before I get the jury in.

24                   All the jurors are present, maybe with the

25   exception of one who couldn't make it through the front door,

1   that means he's probably got symptoms.  So I'll let you know

2   who that is a little later, it's not relevant right now.  And

3   there is two that are missing in action.  We don't know where

4   they are.  So maybe they're sick, who knows.  So we're trying

5   to track those two jurors down.  So they got a little time

6   before they're going to be OSC before the Court but we'll --

7   we're tracking them.

8            Now, let's first deal with this motion, this

9   issue with Mr. Lujan and Ms. Marie Miller.  All right.

10   Mr. Lujan, you want to begin?  It's your motion.

11            MR. LUJAN:  Yes, Your Honor.

12            THE COURT:  And you could hear okay here,

13   Mr. Lujan?  Everything is good.

14            MR. LUJAN:  May I go up there?

15            THE COURT:  Yes, please.  That would be helpful

16   if you go up to the bench.  I mean the podium.

17            (Pause.)

18            And may I remind everyone, civility is the

19   operative word in my courtroom at all times.  You can be

20   assertive and you can be zealous, but we should always be

21   civil.  Yes, Mr. Lujan, you may proceed.

22            MR. LUJAN:  Okay.  Good morning, Your Honor.

23            THE COURT:  Good morning.

24            MR. LUJAN:  Morning everyone.

25            THE COURT:  Okay.

1          MR. LUJAN:  Okay.  Your Honor, we have filed a

2   motion.

3          THE COURT:  Yup.

4          MR. LUJAN:  And that motion is No. 1, to remove

5   the prosecution team --

6          THE COURT:  Okay, when you say "prosecution

7   team," you mean all three of them?

8          MR. LUJAN:  All three of them, Your Honor.

9          THE COURT:  Wow, that's a very unusual motion in

10  my courtroom, but you're an unusual lawyer.  So go ahead.

11         MR. LUJAN:  But, you know, it's what I wrote.

12         THE COURT:  Yeah, I saw that, go ahead.  But you

13  want to remove the whole team?  That's been working on this

14  case forever, but go ahead.

15         MR. LUJAN:  All right.  And so from participating

16  in this matter, further.  Number two, we're asking for an

17  evidentiary hearing.  Number three, we're asking to compel the

18  government to provide evidence and, excuse me, Your Honor.

19         THE COURT:  Go ahead.

20         MR. LUJAN:  And witnesses at the evidentiary

21  hearing.  Number four, for Brady materials.  Five, sanctions

22  for failure to disclose Brady materials.  And six -- rather,

23  six, to invite severed defendants to participate.  And seven,

24  continuation of the trial date.

25         THE COURT:  Wait.  Wait.  Wait.  I'm sorry.  To

```
 1    invite severed defendants...

 2                 MR. LUJAN:  Yes.

 3                 THE COURT:  The other defendants, who are not in

 4    trial, for what?

 5                 MR. LUJAN:  Well, to participate.

 6                 THE COURT:  You mean, to come into this

 7    courtroom, for what?  For what purpose?

 8                 MR. LUJAN:  So that they can see what's going on,

 9    themselves.

10                 THE COURT:  Okay, Mr. Lujan, they can -- they're

11    more than welcome -- well, no, wait a minute.  They can still,

12    it's open to the public.

13                 MR. LUJAN:  That's right.

14                 THE COURT:  Yeah.  I don't think you have to ask

15    me that.

16                 MR. LUJAN:  Okay.  And continuation of the trial

17    date until this matter is resolved.

18                 THE COURT:  Okay, now I might have a problem with

19    that.  But I will resolve it and I will not -- we will see

20    what we're going to do with the jury.  I hope that we can

21    resolve it today within 45 minutes but I doubt that based on

22    what you're saying.

23                 MR. LUJAN:  I doubt that.

24                 THE COURT:  So tell me why are you making this

25    motion for -- what is it?  Disqualification of the entire
```

1  prosecution team?

2          MR. LUJAN:  Yes.  Your Honor.

3          THE COURT:  Yeah.

4          MR. LUJAN:  All right.  It is --

5          THE COURT:  Mr. Lujan, that's a very serious

6  motion.

7          MR. LUJAN:  That's right.  And it's because

8  there's been very serious events that have occurred.

9          THE COURT:  Okay.

10          MR. LUJAN:  And some of them -- I mean, first of

11  all, we were told that our clients are -- rather, my client

12  and the other defendants, you know, have engaged in witness

13  tampering of a key government witness.

14          THE COURT:  Okay.

15          MR. LUJAN:  And that as a result of that, you

16  know, they're going to present Mr. Marinho live.

17          THE COURT:  This is the defendant that's --

18          MR. LUJAN:  No, he's not a defendant.

19          THE COURT:  I mean, not a defendant.  But he's a

20  --

21          MR. LUJAN:  He's the pilot, he's a Rule 15

22  deposition --

23          THE COURT:  Right.

24          MR. LUJAN:  -- witness that testified.

25          THE COURT:  That's right, okay.

1          MR. LUJAN:  And we spent three full days on his

2     deposition.  I believe September 15, 16, and 18, 2020.

3          THE COURT:  This is Mr. Marinho, who's in Spain

4     right now?

5          MR. LUJAN:  Well, we don't know, Your Honor,

6     because --

7          THE COURT:  Is that correct, Ms. Miller?

8          MS. M. MILLER:  Yes, Your Honor, that is correct.

9          THE COURT:  Okay, Mr. Marinho is in Spain.  Okay.

10          MR. LUJAN:  Well --

11          THE COURT:  Go ahead.

12          MR. LUJAN:  All we know is that he's in touch

13     with Ms. Miller.

14          THE COURT:  Well of course.  If he's going to be

15     her witness, he's going to be --

16          MR. LUJAN:  Well, Your Honor, he's a witness, you

17     know, for deposition.  It's already done.

18          THE COURT:  Okay, oh, I see.  All right.

19          MR. LUJAN:  That's right, the deposition is done

20     so you know.  But there is -- you've seen e-mails and there

21     are e-mails where Mr. -- Ms. Miller and Mr. Marinho are

22     talking to each other and, you know, one of them, for example,

23     is -- has the lawyer called, meaning me, Mr. Crowe's lawyer,

24     and secondly, the other one is, "Please don't let them know

25     I'm with you, you know, so I can get more evidence against

1     them," meaning, Mr. Crowe and myself.

2            THE COURT:  Meaning -- I'm sorry, so meaning

3     you're saying that you believe that the prosecution team has

4     tried to influence their witness to continue to get evidence

5     against your client?

6            MR. LUJAN:  Your Honor, they gave us -- they gave

7     us e-mails, which they filed under seal.

8            THE COURT:  Right.

9            MR. LUJAN:  With you.

10          THE COURT:  Right, which I thought it was kind of

11    odd, an ex parte application.  And of course, nothing came out

12    of that.  Then all of a sudden, you got served, right?

13         MR. LUJAN:  Well, we got served and then I asked

14    --

15         THE COURT:  Is that probably by mistake?  Yeah,

16    prosecutor is nodding their head.  By mistake.

17         MR. LUJAN:  Well --

18         MS. M. MILLER:  Yes, Your Honor, that was by

19    mistake.

20         MR. LUJAN:  -- I don't read their mind.

21         THE COURT:  I figured if you're going to go ex

22    parte and say that this is an urgent situation and you're

23    going into a judge, it doesn't happen often, but when do you

24    that, they probably didn't want you to have notice and --

25         MR. LUJAN:  They didn't want us to have notice

1    that they're in touch with Marinho and that Marinho is making

2    accusations.

3             THE COURT:  But they could be in touch with

4    Marinho, would you agree?  They could be in touch with

5    Marinho, just like you could be in touch with --

6             MR. LUJAN:  No, believe me, I'm not about to be

7    in touch with Marinho, because Marinho is a cooperating

8    witness for the government.

9             THE COURT:  No, but my point is, you can be.  Not

10    that you -- you don't want to be but --

11             MR. LUJAN:  Your Honor, if I was stupid, yes.

12             THE COURT:  Okay.

13             MR. LUJAN:  I can be in touch with him and I'd

14    like to think, you know, my father didn't sire a stupid guy.

15             THE COURT:  All right, Mr. Lujan.  I'm pretty

16    sure he didn't.  Go ahead.

17             MR. LUJAN:  So -- so that's what -- you know.

18             THE COURT:  Okay.

19             MR. LUJAN:  Whether it was a mistake that they

20    served us or not, you know, they went to Your Honor, filed

21    something and gave you something that they thought it would be

22    a secret between them and Your Honor.  And not knowing that

23    Your Honor, you know, is not going to allow that.  They didn't

24    know that, in my opinion.  But the important thing --

25             THE COURT:  Well, I felt that the information

1  that they offered me was not sufficient, you know, I said it

2  just -- as you know, they conducted an investigation and I

3  just felt it wasn't sufficient.

4          MR. LUJAN:  Your Honor, they've conducted the

5  investigation since before 2020.

6          THE COURT:  Okay.

7          MR. LUJAN:  We've taken three days of deposition.

8  They had him in Hawaii.  Mr. Leon Guerrero interviewed Marinho

9  in Guam, you know, at the airport in 2020, when he was on -- I

10  believe on his way to Hawaii or coming back from Hawaii for

11  his --

12          THE COURT:  But let me just back up for a second.

13  So on this issue of secrecy, ex parte, there is no harm, no

14  foul now because the prosecution mistakenly served you and now

15  you have notice of what they did.

16          MR. LUJAN:  Your Honor, there was an attempt

17  here, there was an attempt; and that is, Mr. Marinho sends a

18  -- and we filed Exhibit A, which is a video, sends of video to

19  my client, Mr. Crowe, in which he's saying that the government

20  did all these things to me, they forced me, you know, they

21  forced me to testify, you know --

22          THE COURT:  By the way, I need to watch the video

23  so we're going to try to watch the video right now.  I have

24  not watched the video.  I'll be honest with you.  I have not

25  watched the video.  So I'm going to watch it today.  I'm going

1   to watch it now.  So since you're on the video, can we watch

2   it?  Do you have it?

3               MS. M. MILLER:  I think that would be wonderful

4   because that way, Your Honor, you could actually hear what the

5   witness says versus Mr. Lujan's --

6               THE COURT:  Recitation.

7               MS. M. MILLER:  -- of what the witness says.

8               MR. LUJAN:  Your Honor, we filed it with the

9   Court.

10              THE COURT:  Okay, so we'll play it.  Let's play

11  it.

12              MR. LUJAN:  Okay.

13              MS. M. MILLER:  And also, Your Honor, one more

14  thing, before playing it, so unlike what the government did in

15  giving Your Honor the dates and the communications with Mr.

16  Marinho that we had in anticipation of this kind of antic, we

17  have not gotten from Mr. Lujan the date of this recording, the

18  condition of the recording, how he came in possession of the

19  recording.  So those are questions that I think are really

20  critical to be answered because timing of this is very

21  important.

22              THE COURT:  So Mr. Lujan, do you have the date?

23  Do you know the date that this was recorded?

24              MR. LUJAN:  I believe it was February 19th.

25              THE COURT:  Okay.

          MR. LUJAN:  When Marinho, Mr. Marinho, somehow
sent it to my client.

          THE COURT:  Mr. Crowe?

          MR. LUJAN:  Yes.

          THE COURT:  Okay, so you're -- so Marinho could
be like a double-agent here?  He's working for them and for
you?

          MR. LUJAN:  No, no, Your Honor.  He's not a
double-agent.

          THE COURT:  Double-type of witness?

          MR. LUJAN:  He was being used by the government,
he was being used --

          THE COURT:  Of course.

          MR. LUJAN:  Of course, to lure who?  Who do you
think they want to lure?  It's sent to it Mr. Crowe, so who do
you think is the lawyer that's referred in that e-mail that's
between Marinho and Ms. Miller.

          THE COURT:  All right.  So February 1st, you
believe, is the date of the recording?

          MR. LUJAN:  I believe so.

          THE COURT:  And then who did the recording?

          MR. LUJAN:  We don't know, we have no idea.
Maybe Ms. Miller.  I expect Ms. Miller did it because she's --

          MS. M. MILLER:  Your Honor, I'm going to move to
strike and I'm going to ask Your Honor to please advise

1  Mr. Lujan to be very cautious about saying things on the

2  record that are wholly unsupported by facts.

3          THE COURT:  Okay, Mr. Lujan, I would agree with

4  that.  Both of you need to do that, both of you -- everybody

5  needs to do that.  So you're just guessing but you don't have

6  any evidence as -- wait just a minute.  You don't know who did

7  it.  Long story short, you don't know who did it.

8          MR. LUJAN:  Well, all we know is that my client

9  gets it from Marinho, all it is, is he gets that video and

10 it's Marinho and which we're going to play, but --

11         THE COURT:  It's Marinho speaking to?

12         MR. LUJAN:  I believe, yes.

13         THE COURT:  To who?

14         MR. LUJAN:  He's saying, you know --

15         THE COURT:  He's telling Mr. Crowe --

16         MR. LUJAN:  He's saying how you know --

17         THE COURT:  Okay, we'll watch it, we'll watch the

18 video.

19         MR. LUJAN:  -- just watch.

20         THE COURT:  Let's get the best evidence.

21         MR. LUJAN:  That's right.  But I do have -- I do

22 have a basis to make -- you know, to make that conclusion,

23 because Marinho is in touch with Ms. Miller.

24         THE COURT:  Okay.  So --

25         MR. LUJAN:  And yet they're communicating with

1    each other, e-mail and everything.  And so --

2              THE COURT:  But even -- let's -- so Mr. Lujan,

3    let's just get this in perspective, so I want to get right to

4    the tape in one minute.

5              MR. LUJAN:  Okay.

6              THE COURT:  Mr. -- I mean the prosecutor has a

7    right to speak to Marinho.

8              MR. LUJAN:  I agree.

9              THE COURT:  Okay.  You have a right to speak to

10   Marinho.  Whether you guys do it or not, that's up to you.

11   The prosecution and defense cannot intimidate him, cannot

12   unduly -- they can't influence him, they're not allowed to do

13   certain things because you're all bound by the rule of ethics,

14   so we know that.

15             MR. LUJAN:  And, Your Honor, I never tried to

16   intimidate him.  I never tried to talk to him.  I don't care

17   to talk to Marinho because I took his deposition three days.

18             THE COURT:  Okay.

19             MR. LUJAN:  So I'm very satisfied, but there is

20   only one person here that he was in touch with, you know,

21   through e-mail and I guess through blackened, you know,

22   attachments that was given to Your Honor, blackout, so -- we

23   want to see those, we want those things also.

24             THE COURT:  Let's listen to the tape first and

25   then we could get into whatever else you want.  Does

```
 1   government have the tape?  Does somebody have it?  I know you
 2   guys filed it with the Court.
 3              MR. LUJAN:  Here.  I'll give you, Your Honor, my
 4   copy.
 5              THE COURT:  Okay.  Thank you.
 6              MR. LUJAN:  It's my Exhibit A.
 7              THE COURT:  Okay.  Exhibit A, thank you.  That's
 8   right.  You got it?  That's okay.  I think we got it Mr. --
 9              MR. LUJAN:  I believe this is it.  I don't know.
10   I've never seen it.  Never watched it.
11              THE COURT:  You've never seen what?
12              MR. LUJAN:  I never watched it because I can't
13   hear it without this hearing aid.
14              THE COURT:  So Mr. Lujan, how can you tell me
15   what it's about if you didn't hear it?
16              MR. LUJAN:  Because other people listened to it.
17              THE COURT:  No, no, tell me what you know.  I
18   don't care what anybody else knows.
19              MR. LUJAN:  There it is, Your Honor.
20              MS. M. MILLER:  Exhibit A.  I attached it as
21   Exhibit A.
22              THE COURT:  All right.  Let's hear it, Counsels.
23              MS. M. MILLER:  Yes, Your Honor.  This is
24   another, yet classic, example of unacceptable behavior by an
25   officer of the Court.
```

```
 1           THE COURT:  Okay.  Let me just say this, Ms.
 2   Miller.  You could make your arguments afterwards.  Let him do
 3   his.  Because the problem with the two of you, like oil and
 4   water, the two of you egg each other on, I know you don't mean
 5   to.  I hope not, but you do.  And it's going to take longer.
 6   So we'll focus.
 7           Defense, this is your motion.  Make your motion.
 8   Prosecutor, you can rebut all you want when you get there.
 9   All right.  Let's go.  Let's hear the tape.  Is it like --
10   it's just audio, right?  No, it's a video?  Let me check out
11   the video.  So is it going to come on?  Okay.  Yes, you guys
12   have been very busy this weekend.
13           MR. LUJAN:  Well you've -- when you're being set
14   up, Your Honor, of course, you need to be busy.
15           THE COURT:  We don't need editorial comments
16   right now.
17           MS. M. MILLER:  Again, Your Honor...
18           THE COURT:  Yes, Mr. Lujan, she objects,
19   sustained.  You could make that in your argument if you really
20   feel set up, but let's just focus on the tape right now.
21           (Pause.)
22           THE COURT:  Okay, let's see.
23           My goal so to try to resolve this motion so we
24   could get to our jury selection.  I just issued an order --
25   did we send that out yet?
```

```
 1                    MS. M. MILLER:  Yes, Your Honor.

 2                    THE COURT:  I just sent an order out on the other

 3     motion that you guys filed.  Okay, give us a second here.  Can

 4     you hear okay, Mr. Lujan?  Are you able to hear okay?

 5                    MR. LUJAN:  Oh, yeah, I can hear with this, with

 6     this on.

 7                    THE COURT:  Okay, good, all right.  Very good.

 8                         (Discussion with clerk.)

 9                    THE COURT:  Just give us a minute, Vergel --

10     we'll have our IT guy pull it up.

11                         (Discussion with clerk.)

12                    THE COURT:  How many jurors do we have in?

13     70-what?  Gina?  So I told the jurors to take a lunch -- I

14     mean a break for 45 minutes, hoping and praying that we'll get

15     this done in 45 minutes.  Oh there you are, Vergel.

16                         (Discussion with clerks.)

17                    MS. M. MILLER:  Your Honor, would you like us to

18     play the video through the trial director?

19                    THE COURT:  Yeah, if you can.

20                    MS. M. MILLER:  We can.

21                    THE COURT:  That'll be great.  Yeah.  That'll be

22     great.  Thank you.  Thank you for that cooperative attitude.

23                    MS. M. MILLER:  Of course, Your Honor.

24                    THE COURT:  Ms. Miller.  See that Mr. Lujan,

25     she's helping us here.
```

```
 1              MR. LUJAN:  Well she's got a lot to atone for.

 2              MS. M. MILLER:  Your Honor, again, I'm going to

 3   move to strike.

 4              THE COURT:  Stricken.  Mr. Lujan...

 5              MS. M. MILLER:  This isn't a mutual thing.  This

 6   is a one-sided thing.

 7              THE COURT:  Mr. Lujan, you don't need to make

 8   those comments.

 9              MR. LUJAN:  Well, I was responding to your

10   comments, Your Honor.

11              THE COURT:  I know.  But my comment is she's

12   being very --

13              MR. LUJAN:  That's right.

14              THE COURT:  The atonement --

15              MR. LUJAN:  I'm saying the reason why she's to --

16              THE COURT:  Keep that --

17              MR. LUJAN:  Because she's scared.

18              THE COURT:  She's not scared.  Mr. Lujan.

19              MR. LUJAN:  Yes, Your Honor.

20              THE COURT:  Let's calm down.  She's not scared

21   and you're not scared.  But you guys better be scared because

22   I'm going to tell you this right now, if this attitude keeps

23   up, from anybody, anybody in this courtroom, I already said

24   this, at the end of the trial, there might be like an

25   increase, like, in fines and contempt, for contempt of Court,
```

```
 1   bad behavior, un- -- incivility.  We don't want that.  We
 2   don't want people to go to jail.  I don't think I jailed a
 3   lawyer, yet, in 29 years, I have not.  Have I fined a lawyer?
 4   Maybe once.  And maybe you guys got a lot of money, I don't
 5   know.  But the point is, you don't want to be held in
 6   contempt, neither of you.  You both are very aggressive and
 7   you're -- lawyers, but you're also very zealous for your
 8   party, for who you represent.  So let's -- remember that.
 9   Because I said, I'm not going go into a hearing on contempt
10   during the trial.  It's going to be after the trial.  That's
11   just how I'm going to roll, okay?  We're ready to go, go
12   ahead.  Let's go.
13              I gather this is Marinho?
14              MS. M. MILLER:  Yes, Your Honor, that's
15   Mr. Marinho.
16              THE COURT:  Marinho, is it Marinho?
17              MS. M. MILLER:  Marinho, yes.
18              THE COURT:  Marinho, yes.
19              MS. S. MILLER:  I just want to warn everyone.  I
20   don't know how the sound is going to be.  So hopefully it's
21   not too loud.
22              THE COURT:  Okay.  Let's try it.
23              (Exhibit A played.)
24              THE COURT:  Okay.  I want to hear it again.  I
25   want to go back to the -- I got to hear it again.  I'm not
```

```
 1   sure... I'm getting to understand his accent better as it went

 2   on, but I just didn't understand the context of some of it.

 3   Okay.

 4                    (Video played again.)

 5                    MS. S. MILLER:  Unless Your Honor can turn up the

 6   sound and a little bit more, I think that's as loud as I can

 7   get it.

 8                    THE COURT:  I can hear it fine, can you all hear

 9   it?  Counsels?

10                    MS. M. MILLER:  Yeah.

11                    THE COURT:  I can hear it.  I'm fine.

12                    (Discussion with clerk.)

13                    THE COURT:  Go ahead, let's play it again.  Wait.

14   Wait.  The volume.  Can we start again and then --

15                    MS. S. MILLER:  I'm sorry.  I don't know why I

16   turned off my --

17                    THE COURT:  It's okay.  Go back.  Yeah, go back,

18   let's go to the beginning.  Thank you, Ms. Samantha Miller.

19                    MS. S. MILLER:  No problem, Your Honor.

20                    (Exhibit A played again.)

21                    THE COURT:  Can we go back?  Just go back, let's

22   go back.  Hold on.  He says "I want to say in front of the

23   judge and jury hold the government" what?

24                    MS. M. MILLER:  How the government played dirt.

25                    THE COURT:  He said how the government -- I'll
```

1   have my -- Veronica, can you understand what he said?

2              COURT REPORTER:  No, Your Honor.  I can't make

3   out.

4              THE COURT:  Let me replay that.  "I want to say

5   in front of the judge and jury" and then he goes on to

6   something about the government dirt.  Right?  Let's hear that

7   again.

8              (Video played.)

9              THE COURT:  Stop, can you stop there?  I got the

10  "hold the government play dirt," then he said, "I hold the

11  land" -- is it "land"?

12             MR. LUJAN:  I believe "trick me."

13             MS. M. MILLER:  He said "public defender betrayed

14  me."  That was the next thing he said.

15             THE COURT:  Okay, let's go back to that sentence.

16             (Video played again.)

17             MS. S. MILLER:  Your Honor, I can go back a

18  little further.

19             THE COURT:  Well tricked, betrayed.  Both bad.

20             (Video played again.)

21             THE COURT:  Can you repeat that last -- go back

22  on that last sentence.  The last two sentences.

23             (Video played again.)

24             THE COURT:  He's got a what in the street?  He

25  has a what in the street?  Anybody know?

        MS. S. MILLER:  Your Honor, I think he's
something to the effect of I'll go to jail or I'll be in the
streets.

        THE COURT:  Oh, I see.  I know he says "I'll go
to jail because I want to tell the truth, it doesn't matter."
Okay.  Let's go back, let me see.  Gina is interpreter.  Thank
you, Gina.  Certified interpreter.  All right.  Can we go back
a little bit, like maybe six sentences back.  I just want to
hear what he said.  I missed -- I'm starting to --

        (Video replayed.)

        THE COURT:  Like what, okay, stop right there.
Like what, did you guys understand it?

        MS. S. MILLER:  Your Honor, I think he's using
profanity with the P word.  Similar to cat.  A big...

        THE COURT:  Sorry?

        MS. S. MILLER:  A wuss, Your Honor, but the
profanity version of wuss.

        THE COURT:  What is it?

        MS. S. MILLER:  Pardon my French.  Pussy.  I
think he's saying I'm going to be a big pussy.

        THE COURT:  Okay, all right.  I thought he said
push.  What is it?  Is this... all right.  Cat.  Got it.

        MS. S. MILLER:  Your Honor, would you like me to
replay that part?

        THE COURT:  Yes, go ahead, replay that part.

```
 1                    (Video replayed.)

 2                    THE COURT:  Like a pinky?  P-U-S-S-Y?  Is that

 3    what he said?

 4                    MS. S. MILLER:  I think it's big P-U-S-S-Y.

 5                    THE COURT:  A biggy?

 6                    MS. S. MILLER:  A --

 7                    THE COURT:  Biggy P-U-S-S-Y?  I think he said

 8    pinky.  I'm like what?  Okay.

 9                    (Pause.)

10                    THE COURT:  Yeah.

11                    MR. HAN:  Your Honor... I think he said he's

12    being pushed, isn't it?

13                    THE COURT:  I have no idea.  I thought he said

14    pink-something.  Then she told me it was a cat.  So now I

15    thought it was a pink cat.  Now it's like big cat.

16                    MR. HAN:  Being pushed, I think.

17                    THE COURT:  Big.

18                    MR. HAN:  Pushed.

19                    THE COURT:  Push?

20                    MR. HAN:  Being pushed.  Being pushed.

21                    THE COURT:  Oh, being pushed?

22                    MS. S. MILLER:  Your Honor, I'll play that part

23    one more time.

24                    THE COURT:  Yeah.  We got so many interpretations

25    here.  He should speak in his own language, then we could
```

```
 1   really get this down.
 2                (Video played.)
 3                THE COURT:  Okay.  I think I've heard enough.
 4   Are you guys -- did any of you need to hear it further,
 5   Counsels?  Okay, Mr. Lujan, do you need to hear it further or
 6   are you okay?
 7                MR. LUJAN:  Your Honor.
 8                THE COURT:  Go ahead.
 9                MR. LUJAN:  Your Honor, that's why I couldn't
10   make it out myself.  And if the entire room is having problems
11   hearing -- you know, understanding it, imagine me without
12   this, when I listened to it.
13                THE COURT:  Okay, very well.
14                MR. LUJAN:  So...
15                THE COURT:  So?
16                MR. LUJAN:  So it speaks for itself.
17                THE COURT:  So what does it say?
18                MR. LUJAN:  It says --
19                THE COURT:  What does it say?  What is it saying?
20                MR. LUJAN:  It says --
21                THE COURT:  Because, guess what, we're getting a
22   lot of interpretations here.
23                MR. LUJAN:  It says he loves Rufus and he gives
24   the phone number and have someone call me.  He says that,
25   that's what I hear.
```

1          THE COURT:  No, I hear him say that, too.  He

2     says have somebody in the UK, UK, meaning, United Kingdom.

3          MR. LUJAN:  I have no idea, Your Honor.  All I

4     know is that it's a set up by --

5          THE COURT:  Wait.  Wait.  Wait.  Mr. Lujan, let's

6     not get into the argument.  Let's focus on the evidence here.

7          So he's saying, Yes, Rufus, I'm sorry, I'm going

8     to testify against you, I cannot be happy in my life.  Long

9     story short.  And so I want to tell the judge and the jury

10    what I -- what, I guess, what went down.  That's kind of what

11    I'm surmising what he's saying.  And he --

12         MR. LUJAN:  I thought he said, Your Honor, that

13    he's sorry about, you know, about that he testified against

14    him.

15         THE COURT:  Right.

16         MR. LUJAN:  And he wants to come and testify.

17         THE COURT:  For him.  For him.

18         MR. LUJAN:  And tell the judge and the jury and

19    what and --

20         THE COURT:  Right.

21         MR. LUJAN:  -- and so you know, he gives a phone

22    number and have someone call me.  That someone has to be, you

23    know, his lawyer.

24         THE COURT:  Okay, so he says.

25         MR. LUJAN:  Who else?

1          THE COURT:  "I want to say in front of the judge

2    and the jury how the government played dirt," okay, I'm just

3    thinking he's saying, if I'm correct, if we all heard the same

4    thing, "how the government played dirty."

5          MR. LUJAN:  That's right.

6          THE COURT:  I want to hold the -- now something

7    with public defender, and then it could be that they betrayed

8    him.  That's -- maybe that's their interpretation.  I have no

9    idea.

10          MR. LUJAN:  I didn't make that out, Your Honor.

11   I couldn't make that out.

12          THE COURT:  Well, no, I'm not telling you --

13          MR. LUJAN:  No, no, I'm just saying I can't hear

14   it that well.

15          THE COURT:  Well, you hear some things.

16          MR. LUJAN:  Oh, yes, I can hear, but that part I

17   could not make out.

18          THE COURT:  Mr. Lujan, I can't either, I can't

19   either.  So I agree with you.

20          MR. LUJAN:  That's all.

21          THE COURT:  All right.  So he prefers to go to

22   jail, he doesn't want to be a big cat, or whatever.  And he

23   would rather... I don't know.  I don't understand that part

24   very well there.  But he wants to -- anyway, he wants to

25   testify in person, I guess, or he's going to testify in

 1    person, if he's allowed to.

 2              So your point is, you're saying we don't really

 3    -- you know what, we need to actually talk to this guy.

 4    You're saying that this guy is feeling intimidated by the

 5    prosecutor, that's your position, right?

 6              MR. LUJAN:  No.  That's not my position.  My

 7    position is that he's saying that because this is a set-up by

 8    the government, he's in touch with Ms. Miller through e-mails,

 9    and that's why, you know, there is a -- he gives -- he gives

10    Rufus his -- in that, I guess that video, his phone number and

11    that's, you know, for someone to call him.  Well, who do you

12    think that someone is?  It's not Mr. Martin, it's not, you

13    know, Mr. McConwell, it's not any of the other defendants,

14    it's not Mr. Han, it's David Lujan.  That's what -- my point

15    is.

16              THE COURT:  What is it with you, Mr. Lujan?  What

17    are they saying -- he's not saying anything about you.

18              MR. LUJAN:  No, he didn't say, but -- but -- but

19    to have someone, you know, he gives the phone number to have

20    someone call.  Then in the e-mail --

21              THE COURT:  You mean so he's saying to Rufus, he

22    calls him Rufy or something, right, that's his nickname for

23    whatever, it sounds like.  You think he's saying tell your

24    attorney to call me?

25              MR. LUJAN:  I believe so.  Your Honor.  I believe

```
 1    that it's intended.
 2              THE COURT:  So let me just say something, I don't
 3    care what anybody believes.  I don't even care what you guys
 4    think the interpretation is, I think we need this guy to be
 5    here to speak in his own language.
 6              MR. LUJAN:  Your Honor --
 7              THE COURT:  Let me just say.
 8              MR. LUJAN:  I agree.
 9              THE COURT:  Okay, so let's not interpret the --
10    we somehow need him.
11              MR. LUJAN:  I agree.
12              THE COURT:  What -- he speaks Spanish?  Is that
13    it?
14              MS. M. MILLER:  Yes.
15              MR. LUJAN:  He speaks Spanish and English, we
16    heard his English.
17              THE COURT:  His English is a little --
18              MR. LUJAN:  I understand.
19              THE COURT:  -- difficult.  If Spanish is his
20    first language, we all know that.  It's harder sometimes, too.
21              MR. LUJAN:  I agree, Your Honor, that you know --
22              THE COURT:  So Mr. Lujan, I don't know if I hear
23    what you think you hear that or insinuate or infer that he's
24    saying that you have something do with this, if he's saying --
25    if assuming for the sake of argument that he's saying, hey,
```

```
1   give your number to your lawyer to call me, okay, that's no

2   big deal.  But I guess -- I think the best thing is that we

3   listen to him in his own language.

4                   MR. LUJAN:  In person, in front of you, in front

5   of the jury.

6                   THE COURT:  Fine, well, if he's here, let's talk

7   to him.  Is he here?

8                   MS. M. MILLER:  No, Your Honor, he's not here.

9                   THE COURT:  Is he coming?

10                  MS. M. MILLER:  Well, Your Honor, that depends.

11  He's kind of gone back and forth, he -- you know, when we have

12  a chance to respond to this --

13                  THE COURT:  You'll tell me.  Well all right.

14                  MS. M. MILLER:  If responding to this is even

15  necessary.

16                  THE COURT:  No, I don't think -- I don't need you

17  guys need to respond to any allegations because I don't know

18  what the allegations are.  If the allegations -- if there are

19  any allegations based on misconduct as a result of this tape,

20  I don't hear it or see it necessarily.  All I see is a

21  government witness vacillating.  That's what I see.

22                  And he's basic -- and I do think he's saying --

23  the government was dirty and -- I mean if that's what he's

24  saying but we have to verify that.  And he's also saying that

25  he was maybe betrayed or something with his public defender.
```

 1  We hear that.

 2          So he's feeling a little vulnerable, I guess,

 3  lost, who knows.  Whatever.  But we need to hear from him so

 4  we can't -- I can't -- you guys can't argue this to me because

 5  look at, you know Han says something, Samantha Brennan -- I

 6  mean Samantha Miller says something, David Lujan has another

 7  interpretation.  We all have different interpretations of what

 8  this guy is saying.

 9          So let's take it from there.  I think -- anything

10  else, Mr. Lujan?  You don't have to get into the arguments

11  because I really need to hear the substance of what he has to

12  say.  He probably has a lot to say in his own language.

13          MR. LUJAN:  And Your Honor, I agree with you that

14  the only person that can clear anything up is him.  No one

15  else.

16          THE COURT:  Okay, so we agree on that.

17          MR. LUJAN:  We could have 20 interpreters here,

18  like we had last time.  There is only two interpreters the

19  last time when we did the --

20          THE COURT:  Yeah.

21          MR. LUJAN:  But you know, but -- but --

22          THE COURT:  Is he like, okay, so in Spanish there

23  is different dialects and everything.  We have to know which

24  one he is.  We'll figure that out.  I'm pretty sure you guys

25  figured that out already.

```
1              MS. M. MILLER:  We have, Your Honor.

2              THE COURT:  Okay.  Got it.  All right.  So

3   Mr. Lujan, why don't we put this on hold for a second.  I mean

4   not -- for a little bit and then get him in.  And maybe even

5   get him to testify via Zoom if we have to.  I would prefer him

6   in person, too.  I think he should -- who is his lawyer?  Does

7   he have a lawyer?

8              MR. LUJAN:  Well the federal public defender,

9   Your Honor, was appointed.

10             THE COURT:  So he had a lawyer?

11             MR. LUJAN:  Well during the deposition --

12             THE COURT:  Hold on, Ms. Miller, let me talk to

13  him.

14             MR. LUJAN:  During the deposition.

15             THE COURT:  Who was his lawyer at FPD?

16             MR. LUJAN:  Well, Gorman.  But then Lani is the

17  one that attended the deposition.

18             THE COURT:  So he does have -- he does have a

19  lawyer; is that correct?

20             MR. LUJAN:  Well, he had a lawyer then.  I don't

21  know whether he still has a lawyer.

22             THE COURT:  Well, he won't -- he will not -- he

23  will still always have a lawyer unless the lawyer withdraws.

24             MR. LUJAN:  I don't know.  I'm just --

25             THE COURT:  No, and I would have to -- you know,
```

```
 1    allow him to withdraw.
 2              MR. LUJAN:  All I know, Your Honor, is that, you
 3    know, he should be brought here.
 4              THE COURT:  Okay.  You want him here.  All right.
 5    So Mr. Lujan, you know, being respectful here, I don't really
 6    want to hear any arguments until I hear from -- okay.
 7              MR. LUJAN:  Your Honor, you know.
 8              THE COURT:  You're in agreement?
 9              MR. LUJAN:  I'm in agreement and I believe that
10    the rest of the argument can be -- you know, when he
11    testifies, it will clear up a lot of the --
12              THE COURT:  I hope so.
13              MR. LUJAN:  Yeah, it should, Your Honor.
14              THE COURT:  I think it will, too.  Sounds like
15    he's got something to say.  Okay, Mr. Lujan.  Thank you.
16              MR. LUJAN:  Thank you, Your Honor.
17              THE COURT:  All right.  Yes, Mr. Han, you want to
18    say something before I hear from Ms. Marie Miller?
19              MR. HAN:  Yes, Your Honor, just to add that Mr.
20    Lujan received the tape on February 19th.
21              THE COURT:  Yeah.
22              MR. HAN:  The ex parte application by the
23    government to you, there is a -- they attached an e-mail dated
24    February 23rd, where Marinho tells Ms. Miller that "Marie
25    Miller, please don't tell them I'm going with you, and let
```

1    them think I'm with them and I get you more proof."

2              That's four days after the -- when Mr. Lujan

3    received the tape, Your Honor.

4              THE COURT:  Okay.  All right.  So we'll get into

5    the -- we'll get into the logistics, I mean not logistics, but

6    the details of he said, he said, she said, okay, later.  I

7    just want to hear from him, we'll get a timeline.  It will be

8    clearer for me.  All right.  Ms. Marie Miller, just a limited

9    response because I don't --

10             MS. M. MILLER:  Very limited, Your Honor.

11             THE COURT:  Yeah.  I don't really want to hear --

12   you don't have to respond to any accusations, because as far

13   as I know, other than that this witness seems teeter-tottering

14   here.  Yeah, go ahead.

15             MS. M. MILLER:  Yes, and Your Honor, because of

16   what Mr. Han just said, that's the whole purpose why we filed

17   all of those communications with her Honor.

18             THE COURT:  Okay.

19             MS. M. MILLER:  Because we want to make sure that

20   everything is above board and there are no questions.  I'm

21   sure Your Honor does not want to be surprised.

22             THE COURT:  Yeah.

23             MS. M. MILLER:  And does not want something to

24   happen that is inappropriate.  So Mr. Marinho, as you know,

25   did testify in a Rule 15 deposition.

THE COURT:  Right.  Right.

MS. M. MILLER:  The defendants filed -- tried to prevent it five times.  Judge Bordallo eventually said it's going forward.

THE COURT:  Okay.

MS. M. MILLER:  Mr. Marinho was issued a material witness warrant, which he didn't appreciate because it required him to stay in Guam and he was not allowed to go home to Spain.  So he was not very happy about that.  But he was given a public defender, who I'm surprised Mr. Lujan didn't seem to recall immediately was his niece, Leilani Lujan, who represented Mr. Marinho.  And Mr. Bordallo -- Judge Bordallo wanted to ensure that Mr. Marinho was, despite the material witness warrant, testifying consensually.

We had a hearing and Ms. Lujan did represent to Judge Bordallo that her client was testifying consensually. On the record, during his deposition, we also confirmed that despite the material witness warrant, he was testifying consensually.  His testimony was devastating to the defense, Your Honor.  And I can't overestimate how devastating it was.

But because the defense was aware of that, they objected to every single question during that deposition and with the interpreters and with the constant objections, Mr. Lujan acting completely out of control, walking out of the deposition at one point, using exhibits that he refused to

show me at many points, his co-Counsel had to actually stop
the deposition and remove Mr. Lujan and ask him to send me the
documents he was showing to the witness.  It was that bad.
Understandable, though --

        THE COURT:  Believe me, Judge Bordallo told me
about it.

        MS. M. MILLER:  Warned you about it.

        THE COURT:  Warned me.  Judge Bordallo and Judge
Manibusan have lived with you guys --

        MS. M. MILLER:  Yes.

        THE COURT:  -- for many years.

        MS. M. MILLER:  But Your Honor --

        THE COURT:  You just had me for the last few
months.

        MS. M. MILLER:  I really want to be -- I don't
want to be lumped in with Mr. Lujan.

        THE COURT:  No, nobody is lumping you in.  I'm
just saying that I've heard that the depositions end --

        MS. M. MILLER:  Yes.  Yes, it was ugly.

        THE COURT:  Well, I think this whole trial has
been ugly with all of you guys in pretrial.  So --

        MS. M. MILLER:  But --

        THE COURT:  -- that's why we're trying to clear
it up and move on.

        MS. M. MILLER:  Absolutely.  But Your Honor --

```
 1                    THE COURT:  I'm pushing guys to move.

 2                    MS. M. MILLER:  What happened was when

 3      Mr. Marinho got to the airport, the defendants slapped him

 4      with a lawsuit.

 5                    THE COURT:  Okay.  What --

 6                    MS. M. MILLER:  You want to talk about

 7      intimidation, they slapped him with a lawsuit because they

 8      wanted to make sure that he could never and would never come

 9      back here.

10                    And the reason why we filed what we filed with

11      Her Honor is because there were discussions with someone that

12      contacted Mr. Marinho after he disclosed to Mr. Crowe that he

13      was going to testify live for the government, we contacted

14      him, we said, Will you testify live?  He's a Spanish citizen,

15      we can't force him to come here.

16                    He said, Yes, I will.

17                    Then we got an e-mail, which we produced to Your

18      Honor about a week later after the February 19th video where

19      he said, I can't come live, Mr. Rufus Crowe told me that he

20      can't sleep, he can't eat, he's sick to his stomach because of

21      what's happening and I can't do that to him, I want peace, I

22      want peace, I want peace.

23                    So we did nothing.

24                    THE COURT:  Similar to what he's saying in the

25      tape?
```

1          MS. M. MILLER:  Yeah.  Absolutely.  So you know

2    what we did, Your Honor, nothing.  Nothing.  And then a week

3    later, he e-mails me again, you have all of the

4    communications.  And he says, I changed my mind, I want to

5    testify because they're threatening me.

6          THE COURT:  You're saying Marinho is saying that?

7          MS. M. MILLER:  Marinho, yes.

8          THE COURT:  Is saying they meaning?

9          MS. M. MILLER:  They meaning the defense.  "And I

10   want to come now because I want to present myself.  I want the

11   truth to come out.  I don't want anything to be hidden."

12   You've seen the communications.  We had them interpreted.  We

13   produced them to Your Honor.  So that's what happened.

14          Now, I think what's so interesting here, Your

15   Honor, is this, because you haven't heard this.  On Sunday,

16   when Mr. Lujan filed this unsubstantiated filing, all

17   attacking the government, first he said when he stood up we

18   were trying to set up him, then he said he's not saying we're

19   trying to set him up.  So I'm still not sure what he's saying.

20   But something very important happened.  The defendants learned

21   that co-defendant Reed is going to testify against them.  And

22   it was only after they learned that, do we have this motion.

23          THE COURT:  Who is his lawyer again?

24          MS. M. MILLER:  His lawyer is Peter Perez.

25          THE COURT:  Peter Perez.  Okay.

```
 1          MS. M. MILLER:  And only after that do we have
 2   this motion to remove all the attorneys, to have an
 3   evidentiary hearing, let's continue the trial, blah-blah-blah,
 4   blah-blah-blah.  But the truth is, they're scrambling because
 5   they didn't know that he was going to testify and now they
 6   know that he's going to testify and, you know, they just want
 7   to delay.  That's all this is.
 8          Your Honor read it, you heard these arguments
 9   that were -- made no sense.  We need to pick a jury and we
10   need to move forward.  This case is four years old from the
11   time of indictment.  It's six years old from the time of
12   investigation.  The defendants have been trying to push it,
13   push it, push it for years.  We're here, we have our witnesses
14   here.  We are ready to go.
15          THE COURT:  The problem I have -- okay, the
16   problem I have is I have a motion to recuse you guys.
17          MS. M. MILLER:  I know.
18          THE COURT:  We have to deal with it, first,
19   before I can go in.
20          MS. M. MILLER:  And was there evidence at all,
21   Your Honor, presented to you to support even having an
22   evidentiary issue on it?
23          THE COURT:  Well, I think that there is --
24   whether it supports it or not is one thing, I don't understand
25   it.  I don't understand -- you guys all have different
```

theories about what was said.  I think we just need to hear

from him.  He needs to have his lawyer.

First of all, I'm going to make sure that Marinho

has his public defender, whoever his lawyer is going to be, to

advise him, because he could be incriminating himself.

MS. M. MILLER:  Yes.

THE COURT:  He could be screwing up himself in so

many different ways, especially if he has a civil and a

criminal -- oh, he doesn't have a criminal.

MS. M. MILLER:  He doesn't have any criminal

charges pending against him.

THE COURT:  Possible that a criminal lawsuit can

be brought against him, though.  Who knows?  I mean,

prosecutors always have different prosecutorial crimes that

they're -- in their toolbox.  If he does something.

MS. M. MILLER:  If he perjured himself, of

course.

THE COURT:  Yeah.  So what I think we need to do

is, I need to get ahold of the public defender, so can we --

MS. M. MILLER:  We've already been in touch with

Ms. Lujan and she is --

THE COURT:  Is she here?

MS. M. MILLER:  No, she's not here.  But she --

we've been in touch with her and gave her notice that he may

be coming in to testify live and she's ready to continue to

 1    represent him.

 2              THE COURT:  Can we get her on the line or have

 3    her come over here, real quick, Gina?  I want to talk to her.

 4    Usually she's very -- maybe we could Zoom her in or something

 5    or maybe she's watching, who knows.

 6              MS. M. MILLER:  Maybe we could even get Mr.

 7    Marinho on the line.

 8              THE COURT:  Well, I think she needs talk to him.

 9    Let her talk to him.  I don't think -- I don't want to be

10    involved in any attorney-client discussion.  She -- in

11    fairness to him and to her, let them speak to each other

12    first, she could advise him of whether to speak.  I mean maybe

13    we don't have to have him come here.

14              MS. M. MILLER:  Right.

15              THE COURT:  But short of that, it's not -- so

16    you're not sure if you're going to use him to testify even?

17              MS. M. MILLER:  We're not sure if he's willing to

18    come.  We don't have subpoena authority over him.  He was

19    willing to come, then he changed his mind.  He said he felt

20    threatened by the defendants.  Then he said, I'm still willing

21    to come.  We're not sure whether he's going to be willing to

22    come or not because of everything going on.

23              THE COURT:  We need to speak to his lawyer

24    because, obviously, he thinks you are guys are dirty and

25    you're saying that he thinks they're intimidating him.  Who

1   knows, I mean that's what your guys' arguments are.  I'm not

2   sure what it really is.

3               MS. M. MILLER:  But Your Honor, I think what the

4   point is, at this point, that video is not evidence of any

5   intimidation by the government.

6               THE COURT:  No, other than he says the government

7   is dirty.  What does he mean by that?

8               MS. M. MILLER:  Well, the only thing I could

9   assume is that, as I said, we issued a material witness

10  warrant which required him to stay here.  But Judge Bordallo

11  satisfied himself and Mr. Marinho's attorney satisfied herself

12  that he was testifying voluntarily.

13              THE COURT:  So therein lies the problem.  You're

14  assuming stuff and so is David Lujan.  Both of you are

15  assuming.

16              MS. M. MILLER:  Well, that's the problem with

17  this witness, Your Honor, because we provided you with the

18  e-mail communications where he's telling the government he's

19  being intimidated by the defendants.  He's saying the

20  defendants' Counsel is going to call him.

21              THE COURT:  Okay, so that's my point.  I want to

22  hear from him through -- through his attorney.  If he refuses

23  to testify, then there may be insubstantial evidence for any

24  motion, really.  The -- so --

25              MS. M. MILLER:  Okay.

1          THE COURT:  But I do think that in fairness to

2    everybody, that I get ahold of Leilani Lujan in your presence,

3    all of you, ask her to speak to Marinho and let's just explain

4    to her the situation and see if he is -- you know, she'll just

5    have to talk to him and see if he's willing to come here to

6    Guam to testify or testify via Zoom, as to the circumstances.

7    I mean, relating to this motion.  Because that's all before me

8    in this Court is this motion.  There is a motion to recuse

9    your whole team.  What's the basis for that?

10          MS. M. MILLER:  Your Honor, you haven't heard any

11   basis for that.

12          THE COURT:  Right.  But I -- but I don't

13   understand his statements, either.

14          MS. M. MILLER:  So we're going to --

15          THE COURT:  Here's the problem, you guys -- you

16   and Mr. Lujan are -- you have an interpretation of what you

17   believe is going on in this guy's mind.  And I don't see him

18   saying that you're intimidating him, necessarily.

19          MS. M. MILLER:  No.

20          THE COURT:  All I hear him saying is that, at

21   least the little part that I understand, is that he feels bad

22   that he turned on his friend.

23          MS. M. MILLER:  Right.

24          THE COURT:  And he wants to allegedly come clean.

25   I'm just -- you know.

```
 1                    MS. M. MILLER:  Right --

 2                    THE COURT:  And he wants to come in before a

 3         judge and jury and say otherwise.  But then he also says the

 4         public defender betrayed him.  So that might be an issue, too.

 5                    MS. M. MILLER:  Right.  Right.

 6                    THE COURT:  What is that?  I don't understand --

 7         I don't understand the context of any of what he's saying.

 8         And Mr. Lujan, do you have anything else on an offer of proof,

 9         besides this tape?

10                    MR. LUJAN:  No, Your Honor.  Other than that

11         guess who Marinho claims is dirty?  There is only one party,

12         he didn't say Rufus is dirty, he didn't say David Lujan is

13         dirty, you know.

14                    THE COURT:  Right.

15                    MR. LUJAN:  He said the government is dirty.

16                    THE COURT:  Right.

17                    MR. LUJAN:  Ms. Miller.

18                    THE COURT:  Well, he didn't say Ms. Miller.

19                    MR. LUJAN:  Well, who's the government?

20                    MS. M. MILLER:  Again, move to strike, Your

21         Honor.

22                    MR. LUJAN:  Ms. Miller is --

23                    MS. M. MILLER:  Your Honor --

24                    THE COURT:  Okay, wait.  Wait.  Wait.

25                    MR. LUJAN:  May I finish?  May I finish?
```

```
 1              THE COURT:  No, no, no, Counsels, you could be

 2     seated and you could respond back when she's done.

 3              MR. LUJAN:  All right.  Thank you.

 4              THE COURT:  Let me just say...

 5              (Discussion with clerk.)

 6              (Pause.)

 7              THE COURT:  Oh.  Leilani Lujan.  Leilani Lujan

 8     said she could be here in Court at 11:15.

 9              MS. M. MILLER:  Great.

10              THE COURT:  So let's talk to her.  And frankly,

11     Counsels, really, let's not accuse each other of anything.

12     Mr. Lujan, I don't want to hear that.  I mean save it for

13     argument only if it's -- it's justified.

14              Let us be very calm on this issue, number one.

15     This is like a runaway witness.  That's what you have here.

16     Really.  And you guys are going to -- the prosecutor -- if the

17     prosecutor is not even going call the witness, then it's a

18     nonissue.  It could be a nonissue.

19              MR. LUJAN:  I'm sorry?

20              THE COURT:  If the prosecutor is not even going

21     to call this witness, it could be a nonissue.  The issue of

22     intimidation is another issue.  But if the prosecution is not

23     going to call him, then we just move on.

24              MR. LUJAN:  Your Honor, he testified by

25     deposition.
```

1          THE COURT:  Yeah, but they don't have to use it.

2          MR. LUJAN:  Well, I can use it.

3          THE COURT:  Well, you can.

4          MR. LUJAN:  That's right.  And then I will play

5  that tape, also.

6          THE COURT:  We'll talk about that, Mr. Lujan.

7  We'll cross that bridge when we get to that, if that happens.

8          MR. LUJAN:  And Your Honor, I have a lot more

9  argument.  You asked me to stop, you know, but I do have a lot

10  of argument.

11          THE COURT:  No, Mr. Lujan, my point is, your

12  motion is based on this tape.  This tape is -- we need to

13  reconcile some statements in the tape.  I really believe that

14  Marinho, like any other person who has two languages in his or

15  her life, speak better in their original language, their

16  native language, tongue.  So we need to hear from him.

17          And then that's your basis.  If -- that's why I

18  said, do you have any other offer of proof that the

19  prosecution team should be disqualified?  Any other -- other

20  than this tape?

21          MR. LUJAN:  Yes.  Yes, Your Honor.

22          THE COURT:  What is that?

23          MR. LUJAN:  It's -- it's you know, about Ms.

24  Miller, you know, Ms. Miller accused the juror, Juror 39 ,

25  okay, that Juror 39 was way over the top.  And then she sends

1   FBI people, I believe it was a female, a female FBI. And

2   according to the person that was interviewed, Chaco, Lucy

3   Chaco, she said that they were more interested in finding

4   whether, you know, has anyone donated a large sum of money,

5   had a large sum of money to the school. And she told them --

6   but she did tell them that, you know, that there was a

7   donation that was brought to the school and that she told, I

8   believe the juror, that this came from David Lujan without

9   David Lujan knowing that my name is being used. But that the

10  supply -- school supplies came, you know, from a building that

11  David Lujan owns, that it was going to be demolished. All

12  right. And so you know that -- that corroborates everything

13  that Juror 39 said, but Ms. Miller comes in and guess what Ms.

14  Miller says in chambers. And I put that in the record, Ms.

15  Miller says, well, she sends two FBI and they interviewed the

16  principal, whose husband used to work for Mr. Lujan and

17  Mr. Lujan has been accused of jury tampering and this

18  principal said Lujan has never given anything.

19          Well, that was a lie by Ms. Miller. She lied to

20  Your Honor, she lied to all of us. And so we're asking that

21  those two FBI agents come in and, you know, and so that they

22  can testify, but also that they produce --

23          THE COURT: Wait. Wait. Hold on. Hold on. Ms.

24  Miller, just sit down for a second. I'll let Ms. Miller speak

25  in a second. Here's the bottom line, yes, we see that we had

1   jury selection, that's on the record.

2                   MR. LUJAN:  Okay.

3                   THE COURT:  It does appear that this juror adored

4   you.  That was on the record.  She felt that you were very

5   generous.  And the prosecutor, and I'm just really just

6   summarizing this, like getting straight to the point, the

7   prosecutor felt, was suspicious of this adoration, that you

8   were extremely generous to this private school.  Is it

9   private?

10                  MS. M. MILLER:  Public.

11                  THE COURT:  Public.

12                  MR. LUJAN:  It's elementary, Talofofo Elementary.

13                  THE COURT:  Public school.

14              So yes, we all -- you guys all concede that the

15  prosecutor sent -- asked an FBI agent to investigate whether

16  this story, this adoration situation was true or false.  And

17  Ms. Miller, I will say this, to her credit, she didn't want to

18  put this on the record, as I recall, because she didn't want

19  to embarrass you or... yeah, so that's what I surmised.  And

20  so then you were very upset about that.  You blew up about

21  that because you --

22                  MR. LUJAN:  And I still am.

23                  THE COURT:  Yes, we can tell, Mr. Lujan.  We can

24  tell, I can tell.  So you got to contain it because, come on,

25  we're not street fighting here, guys.  This is a courtroom,

1    this is a court of law.

2              So the point is, she did the investigation.  And

3    I felt, I think I said that, you know, I don't think that

4    there is sufficient evidence here to demonstrate that there

5    was any type of influence by you or her or --

6              MR. LUJAN:  By me.

7              THE COURT:  By you and her together, or -- yeah,

8    that's right.  And then you proceeded, let's put this on a

9    timeline here, you proceeded to do your own investigation.

10             MR. LUJAN:  Well, first of all, Your Honor --

11             THE COURT:  Wait.  Wait.  Wait.  Is that --

12             MR. LUJAN:  I put on the record, no, first of

13   all, that was on a Wednesday when that occurred.

14             THE COURT:  Right.

15             MR. LUJAN:  And so I put on the record after the

16   chambers, after she lied to you as to who the source was.

17             MS. M. MILLER:  Your Honor, I am going to move to

18   strike.

19             MR. LUJAN:  She did lie.  She lied.

20             THE COURT:  No, make your -- hold on.  Hold on.

21   Hold on.  Ms. Miller, make your motion to strike when you do

22   your argument.  And I'll consider it at that time and I'll get

23   back to it.

24             MS. M. MILLER:  It's --

25             THE COURT:  Wait, Counsels, do I have to bring my

1   gavel from there to here?

2              MR. LUJAN:  No, Your Honor.  I'm saying --

3              THE COURT:  Come on.

4              MR. LUJAN:  But she lied and I put that on the

5   record.

6              THE COURT:  Well, you think she lied, but go

7   ahead.

8              MR. LUJAN:  Well, there is no doubt in my mind

9   she lied because the principal that she claims that her

10  husband works for me.

11             THE COURT:  So Mr. Lujan, I've already heard that

12  argument.  And here's the deal, here is the deal, she -- you

13  guys already -- you guys have made the same argument and you

14  have your -- you've exonerated yourself through your own

15  investigation and she has not pursued it further because her

16  investigation is sufficient.

17             MR. LUJAN:  Well, because you know why, Your

18  Honor, because she knows, you know, she better not follow up

19  on it because she lied and I've got the proof that she lied

20  when she used the principal whose husband worked for

21  Mr. Lujan.

22             THE COURT:  Okay, and --

23             MR. LUJAN:  And this principal, Your Honor -- may

24  I finish?  That this principal retired from the elementary

25  school in 2013 or 2014.

```
 1                    THE COURT:  Okay.

 2                    MR. LUJAN:  And so she outright lied because you

 3      know why?  Huh?  Because I believe, I believe, that you know,

 4      she was so -- she felt so... I guess she felt threatened

 5      because this juror said good things about me.

 6                    THE COURT:  Yeah, she was adoring you.  We know

 7      it.

 8                    MR. LUJAN:  That's right.  But it does not -- you

 9      know, it does not authorize the government to come and lie

10      about that juror and that's what they did.  Her, personally,

11      she lied when she said that, you know, that the FBI

12      interviewed the principal whose husband --

13                    THE COURT:  I recall.

14                    MR. LUJAN:  That's right, that's a lie.  Just

15      like Marinho is accusing her of being dirty.

16                    THE COURT:  Okay, well --

17                    MR. LUJAN:  That's Marinho, that's their witness.

18                    THE COURT:  Okay.  Mr. Lujan, let's not bring in

19      Marinho because we don't know everything.

20                    MR. LUJAN:  No, no --

21                    THE COURT:  Let's go back on this issue with the

22      juror.

23                    First of all, the juror is not even on our jury

24      panel.  So again, no harm, no foul.  But the bottom line is,

25      you can't un-ring the bell that you've been accused of
```

```
 1    potential attorney misconduct which has really gotten you

 2    upset.

 3              MR. LUJAN:  That's right.

 4              THE COURT:  I understand that.  Prosecutor would

 5    feel the same way if you accused her, which you are doing,

 6    you're accusing her of stuff, too.  You both are accusing each

 7    other of stuff.

 8              MR. LUJAN:  But I have proof, Your Honor.  I have

 9    proof.

10              THE COURT:  So Mr. Lujan, bottom line is, you

11    have proof.  She was -- Ms. Miller, I'm pretty certain, was

12    told by, I assume the FBI agents who did the investigation,

13    this is what happened, ABC, and so maybe it's the -- something

14    happened with the interpretation from the FBI agent, I don't

15    know.  Bottom line is...

16              MR. LUJAN:  Well, then she should make sure that

17    she understands before she goes in there with her troop and

18    say, you know, that Lujan, you know, Lujan, what do you call

19    that, never... what do you call that, never -- what do you

20    call that, donated anything and that we checked with the FBI,

21    the FBI checked with the principal whose husband used to work

22    for Lujan.

23              THE COURT:  Yup.

24              MR. LUJAN:  And we have Mr. Leon Guerrero here

25    who knows that Lujan, you know, was cleared from any
```

1    allegation of witness tampering or juror tampering because

2    that's what she said in chamber.

3                    THE COURT:  That's right.

4                    MR. LUJAN:  That's right.

5                    THE COURT:  That's right.  Okay, I forgot about

6    that part.

7                    MR. LUJAN:  That's right.  And she said that,

8    Your Honor.

9                    THE COURT:  And so let's put it on the record

10   here again.

11                   MS. M. MILLER:  No, I never said that in

12   chambers.

13                   THE COURT:  No, no, no.  Hold on.

14                   MR. LUJAN:  She did, she said that in chambers.

15   You, Your Honor, said it.  You heard it.

16                   THE COURT:  No, what I heard was -- well... we

17   got it on the record anyway.

18                        (Speakers overlapping.)

19                   MR. LUJAN:  Right.

20                   THE COURT:  What I heard was --

21                   MR. LUJAN:  No, Your Honor, that was not

22   recorded.

23                   THE COURT:  We memorialized it on the record

24   afterwards.

25                   MR. LUJAN:  Right.

```
 1              THE COURT:  So my point is, with regard to your
 2    issue on the jury -- alleged jury influence, I don't think
 3    it's tampering, I think alleged potential jury influence to
 4    say that you're this wonderful lawyer.  Okay, that
 5    investigation was spurred by that, and she did -- I do think
 6    she did say that she had heard there had been a potential jury
 7    tampering in another previous case with you, as I recall that.
 8              MR. LUJAN:  That's right.
 9              THE COURT:  That's right.  So Mr. Lujan --
10              MR. LUJAN:  Yes, Your Honor.
11              THE COURT:  That -- okay, so what do you want me
12    to do with that, you're just saying this prior act by her is
13    part of your argument to get the prosecution off?  Is that it?
14    Let's just narrow this down.
15              MR. LUJAN:  Yes.
16              THE COURT:  Okay.
17              MR. LUJAN:  Well, Your Honor, first of all --
18              THE COURT:  Let me say, let's not repeat
19    everything that went on because I know it's very clear in my
20    head.
21              MR. LUJAN:  You're asking me why.
22              THE COURT:  Mr. Lujan, it's so clear in my head
23    because I'm the one that handled the Boom Boom Mantanona case.
24    I'm the judge that knows the jury witness tampering.  I'm the
25    one that did all that stuff.  So I totally understand all
```

1   that.

2           MR. LUJAN:  I agree.

3           THE COURT:  You were cleared by Fred Black.

4   We've already know that.  Okay.  So what is it that you want

5   me to do with regard to this issue?  Just use it as potential

6   bad act that -- or not -- bad blood?  Whatever you want to

7   call it, to say that they don't -- they -- what?  To say what?

8           MR. LUJAN:  So I'll answer your question, Your

9   Honor.  My motion is to disqualify all three and to remove

10   them.

11           THE COURT:  I got it.

12           MR. LUJAN:  That's what my motion is.

13           THE COURT:  Yeah.  Why are you going to try to

14   get off Samantha Miller?

15           MR. LUJAN:  Well, Your Honor, she can stay and do

16   the trial.

17           THE COURT:  Okay, so now -- you're modifying your

18   motion.  You're modifying your motion.

19           MR. LUJAN:  That's fine.  But Ms. Miller be

20   disqualified and Mr. Leon Guerrero be disqualified because

21   Mr. Leon Guerrero, I can't blame Mr. Samantha Miller, you

22   know, that -- I can't say that she knows, but I tell you what,

23   the one person that knows also is sitting right here on my

24   left, Stephen Leon Guerrero.  She[sic] should be disqualified.

25   He knows that, you know, Boom's case is under seal, he knows

1  that his office, and like you said, Your Honor, when he

2  claimed that he didn't know that Black exonerated me or

3  withdrew the complaint about me, and you told him he should

4  know that.  You did say that.  But --

5          THE COURT:  Yes.  I have been critical -- excuse

6  me.  I have been critical of the U.S. Attorney's office.  I

7  sometimes believe that the left doesn't know what the right is

8  doing, the left hand doesn't know what the right hand is

9  doing.  That is true.  And in some cases, it did involve

10 Mr. Leon Guerrero.

11         Now this issue with Mr. Leon Guerrero and Mr.

12 Black, okay, so now your motion is keep Samantha Miller on but

13 throw out Marie Miller and throw out Stephen Leon Guerrero?

14         MR. LUJAN:  That's fine, Your Honor, that's fine.

15 But --

16         THE COURT:  That's your motion.

17         MR. LUJAN:  But these two should be disqualified.

18         THE COURT:  Okay.  Is there any other basis to

19 disqualify them?  Now we know the two bases.  I got those two.

20 Any other?

21         MR. LUJAN:  Well, Your Honor, the other basis is

22 as I said, the other basis is that there was an attempt, there

23 was an attempt to get me disqualified and that's why they put

24 up Marinho, in my opinion, because they were communicating.

25         Now, now, we finished or we took a break in jury

selection on the 18th, which is a Friday.  The next day, Rufus

Crowe gets a, you know, that videotape from Marinho and then,

you know, in which Marinho is accusing the government of being

dirty and forcing him, you know, to say things and then gives

Rufus so --

THE COURT:  Okay, but --

MR. LUJAN:  My point is, Your Honor, it's a set

up, they were hoping that I will call.  And thank God that,

you know, I couldn't hear well, what he was saying, and that's

why I said, you know, to myself, I'm not going to call because

this is a set up.  It's a set up by the government and then

guess what happens?

THE COURT:  Mr. Lujan, long story short, you feel

that the government is setting you up to get you off the case.

MR. LUJAN:  Yes.  Yes.

THE COURT:  Because what, they're afraid of you?

MR. LUJAN:  No, no, for whatever reason they're

trying to get me.  Well, Your Honor, because you know why?

Because I stand up against them.  But also to deny Mr. Crowe

of his right to, you know, choice of Counsel.

THE COURT:  So there is two bases that I

understand on your motion because we're going to close in a

few minutes to take a break.

MR. LUJAN:  Okay.

THE COURT:  Number one, the Marinho issue, you

1   believe that there is some -- there is some...

2           MR. LUJAN:  There is a concerted plan here.

3           THE COURT:  Misconduct.  There is what?  A --
4   what is there?

5           MR. LUJAN:  A concerted plan on their part.

6           THE COURT:  All right.  So you're calling it set
7   up, concerted plan.  So anyway, so the first basis is the
8   Marinho issue, you feel that there is some type of government
9   misconduct.

10          And the second issue, the second basis, is this
11  whole issue that the prosecutor wanted to bring a potential
12  undue influence with the juror.

13          MR. LUJAN:  Sure.

14          THE COURT:  So I got that.  It's very clear to me
15  now.  Are there any other basis?  Those are two separate and
16  distinct basis.  Anything further?  So if that's the case, I
17  think it's going to be easiest to focus on this.

18          MR. LUJAN:  Your Honor.

19          THE COURT:  Yes.

20          MR. LUJAN:  We do want the government -- the
21  government gave you something that we don't have.

22          THE COURT:  What did they give me?

23          MR. LUJAN:  They give you some blackout portions,
24  you know, of e-mails when they filed that so called *ex parte*.

25          THE COURT:  Okay.

         1              MR. LUJAN:  Okay, we want that, we want a copy of

         2    that.

         3              THE COURT:  You want -- I'm sorry, where is that

         4    located?

         5              MR. LUJAN:  Well, Your Honor, it's in the exhibit

         6    that they filed on the ex parte.

         7              THE COURT:  I got it here, which exhibit number

         8    is that?  Oh, I've got it right here.

         9              MR. LUJAN:  Yeah, yeah.

        10              THE COURT:  The black, the redactions?

        11              MR. LUJAN:  Right.  Everything that's redacted,

        12    we want a copy of that.

        13              THE COURT:  Okay.  All right.

        14              MR. LUJAN:  We're entitled to that.  That's, I

        15    think, Brady.

        16              THE COURT:  Okay, let me ask the prosecution on

        17    that, so okay, so we got the two bases.

        18              Ms. Miller, on this issue of the redactions?

        19              MS. M. MILLER:  I think his concern is that we

        20    did not redact it for you, but we did redact it for the copy

        21    he received.  We redacted it.  Period.  We didn't provide Your

        22    Honor with anything that Mr. Lujan hasn't seen.

        23              THE COURT:  So he has this?

        24              MS. M. MILLER:  He has exactly what was filed

        25    with Your Honor.

 1                    MR. LUJAN:  Your Honor, this is what we have.

 2                    THE COURT:  Do I have -- well, I have the same

 3     thing.

 4                    MR. LUJAN:  Yeah.

 5                    THE COURT:  So do I have more than what you have?

 6                    MR. LUJAN:  I have no idea, Your Honor.  They're

 7     the one sneaking around trying to talk to you.

 8                    THE COURT:  All right.  Ms. Miller, do I have

 9     everything that he has?

10                    MS. M. MILLER:  You have absolutely everything

11     that Mr. Lujan has.  Mr. Lujan has absolutely everything that

12     you have.

13                    THE COURT:  So there is nothing -- just to be

14     clear because lawyers like to talk forever.  Just to be clear,

15     the -- there is nothing that I have additional; is that

16     correct?

17                    MS. M. MILLER:  That is absolutely correct.

18                    THE COURT:  So Mr. Lujan, she says that that's

19     what we got.  But your problem is, you want the redactions

20     that we don't have?

21                    MR. LUJAN:  Yes.  Yes.

22                    THE COURT:  That we both don't have.

23                    MR. LUJAN:  Right.  But you know, I mean it's --

24                    THE COURT:  Are you able to give him the

25     redaction?  What's the deal?

1          MS. M. MILLER:  It's attorney-client privilege

2     communications, Your Honor, no.

3          THE COURT:  Communication between you and

4     Marinho?

5          MS. M. MILLER:  Between the attorneys on the

6     prosecution team, yes.

7          THE COURT:  I see, okay.

8          MR. LUJAN:  Oh, there we go.  So maybe I need to

9     include Ms. Samantha Miller as part of the --

10          MS. M. MILLER:  Should the attorneys not talk.

11          THE COURT:  Wait.  Wait.  Wait.

12          MS. M. MILLER:  Should the attorneys not talk to

13     each other?

14          THE COURT:  Mr. Lujan and Ms. Miller, can you

15     both sit down.  Both of you sit down.  Okay.  Whoever stands

16     up can speak, everyone else cannot speak, number one.  Number

17     two, you see my court reporter to my right?  Veronica.

18          MR. LUJAN:  I understand.

19          THE COURT:  She cannot like --

20          MR. LUJAN:  I understand.  I apologize to her.

21          THE COURT:  Yeah, please.  This is very difficult

22     right now.  All right.  So are you representing to the Court

23     as an officer of the Court, Ms. Marie Miller, that the

24     redactions contained in these exhibits, I have these

25     Government Exhibit C, D, let me look at this.

1        MS. M. MILLER:  We also redacted information

2   about Mr. Marinho's travel plans, Your Honor, because of

3   Mr. Marinho's assertion to the government that he was being

4   threatened by the defendants.

5        THE COURT:  Okay.  So those -- but with regard to

6   the redactions on the -- let's be very clear, Mr. Lujan.  Look

7   at the exhibits so we all have this on the record.  This is

8   Government's Exhibit B, there is a redaction.  Government

9   Exhibit C, there is a redaction.  Government Exhibit D, there

10  are three redactions there.  Government Exhibit D, this next

11  page also has a redaction.  Okay.  In addition, then you have

12  the travel; is that correct, Ms. Marie Miller?

13       MS. M. MILLER:  That is correct, Your Honor.

14       THE COURT:  All right.  So Mr. Lujan, as an

15  officer of the Court, you're representing that these

16  redactions are justified because?  Ms. Miller?

17       MS. M. MILLER:  Absolutely, Your Honor.

18       THE COURT:  Because?

19       MS. M. MILLER:  Oh, I'm so sorry.  It is because

20  it is attorney-client privileged communications.  Every

21  communication between our office and Mr. Marinho was produced

22  to Your Honor with the exception of the dates of his travel

23  and the coordination of his travel because of concerns that we

24  had based on his representations.

25       THE COURT:  Mr. Lujan, you could be seated.

```
 1    Wait, wait.  Let her talk first.  Ms. Miller, you could stand.

 2                     MS. M. MILLER:  Yes.

 3                     THE COURT:  All right.  So Ms. Miller, on the

 4    redactions that we with just identified --

 5                     MS. M. MILLER:  Yes.

 6                     THE COURT:  What's contained in there is

 7    justified to be redacted from the Court and the defense

 8    because it contains attorney-client privilege communications?

 9                     MS. M. MILLER:  Yes, Your Honor.

10                     THE COURT:  Between -- not attorney-client.

11    Attorney communication.

12                     MS. M. MILLER:  Attorney communications.

13    Attorney work product and --

14                     THE COURT:  Work product.

15                     MS. M. MILLER:  -- travel information and

16    coordination with Mr. Marinho.

17                     THE COURT:  So when you say attorney work

18    product, are you speaking of the three of you?

19                     MS. M. MILLER:  I'm speaking of the three of us,

20    yes.

21                     THE COURT:  All right.  All right.  Thank you.

22    So all right, Mr. Lujan, now you can stand.

23                     MR. LUJAN:  Thank you, Your Honor.

24                     THE COURT:  So based on that representation, what

25    do you have to say?
```

                    MR. LUJAN:  Well, you know, as far as the Marinho
itinerary, they can give that to Your Honor to review in
camera.

                    THE COURT:  Okay.  Well, we'll talk about that
later.

                    MR. LUJAN:  Okay.

                    THE COURT:  He may not come.  We'll see.

                    MR. LUJAN:  Well, Your Honor, he wants to come.

                    THE COURT:  Well, I don't know.  You guys --
somebody says he wants to, somebody says he doesn't.  We'll
let Leilani Lujan tell us what he wants to do.  But anything
else on the redactions though?

                    MR. LUJAN:  On --

                    THE COURT:  You heard her justification, they're
redacted because it's attorney work product information.  It's
a work product privilege.  They got that.

                    MR. LUJAN:  What is the work product, Your Honor,
when they gave us copy of their e-mails between Ms. Miller and
Mr. Marinho?

                    THE COURT:  If you read the definition of work
product, it could be trial strategy.  It could be --

                    MR. LUJAN:  A itinerary from Spain to come to
Guam?

                    THE COURT:  No, we're talking -- she had
allegedly a good reason because of safety.  What about -- do

1  you have anything else to say about this?

2          MR. LUJAN:  Your Honor, I just don't see -- you

3  know, how the travel itinerary is going to be, I guess you

4  know, will in danger Mr. Marinho.

5          THE COURT:  Well, she said that because Mr.

6  Marinho said that you guys were threatening him.  Long story

7  short.  So she wants his safety to be secured.

8          MR. LUJAN:  But ask them, where is the proof that

9  Rufus or Mr. -- you know, Walker or --

10          THE COURT:  Mr. Lujan, I'm not going to -- I

11  don't care about them.  I want to talk to Marinho.

12          MR. LUJAN:  Your Honor, I agree, I'll shut up if

13  Marinho will come to Guam.

14          THE COURT:  Well -- you have to be quiet because

15  I'm going to recess right now.

16          MR. LUJAN:  Your Honor, I'll pay for his ticket.

17  I swear to God.

18          THE COURT:  Wow.

19          MR. LUJAN:  That's right.  We can have him

20  testify.

21          THE COURT:  He'll want business class, I'm sure.

22          MR. LUJAN:  That's right.  Business first class

23  is fine, Your Honor.  I'll do it.  But bring him here.

24          THE COURT:  That is impressive.  I'm sure he

25  would -- okay, let's -- we're going to take a recess.

1          MR. LUJAN:  Yes, Your Honor.

2          THE COURT:  We're going to have two things, it's

3    quarter till 11.  Ms. Leilani Lujan will be here in

4    30 minutes, hopefully sooner.  We will discuss with her what

5    to do.  The only issue for me is, let's take care of this

6    issue with Marinho.  Get him to testify and then I will make a

7    decision.  I'm pretty sure it's not going to be that difficult

8    to do.

9          MR. LUJAN:  Thank you, Your Honor.

10         THE COURT:  All right.  So in the meantime,

11   please be civil to each other, Counsels.  I'll see you all of

12   you -- I'll see you at -- in 20 minutes okay.  So 5 after -- 5

13   after 11.  I'll see all of you.

14         So we'll take a 20-minute recess.  And then I

15   will let the jurors know we're to continue to be on break and

16   then they're going to be getting lunch.  Good thing we're

17   going to serve them lunch right now.  Thank you, everyone.

18   See you in 20 minutes.  You could leave your paperwork here.

19              (Recess taken at 10:44 a.m.)

20              (Back on the record at 11:07 a.m.)

21         THE COURT:  We're back on the record, please be

22   seated.  Okay, is Leilani Lujan in the courthouse?  Can we

23   check downstairs?  Oh, there.  You can be seated.  We're just

24   trying to track Leilani Lujan.  We're back on the record, all

25   Counsels present, all defendants present.  She should be here

1  shortly.  Counsels, I've already told the jurors to go ahead

2  and -- Mr. Lujan, can you hear me?

3                MR. LUJAN:  (Nodded head.)

4                THE COURT:  I've already told the jurors to go

5  ahead and eat lunch.  So our Court has provided them lunch

6  today.  And so they're eating lunch right now and we will keep

7  our schedule as is.

8                So lunch schedule is -- I don't have my calendar,

9  my Court... can you give me copy of the schedule, Gina?  So

10  we're going to keep the same lunch schedule, Counsels.

11  Because that's what I promised the jurors.  Oh, no, okay,

12  yeah, let's see -- she should be here in a few minutes.  Let's

13  talk to her.  That'll give her time to speak to her client, I

14  hope.  What time is it in Spain right now?  Does anybody know?

15                MS. S. MILLER:  Your Honor, I think it's around

16  2:00 a.m., something like that.

17                THE COURT:  Do you think the guy is up?  Anybody

18  know?

19                MS. MCCONWELL:  Question is, has he gone to bed?

20                THE COURT:  Some people get out of bed if they

21  hear the phone ringing that late or early.

22                Okay.  So let me just say...it said in the video

23  he's in the UK, right?  He said send me somebody to the UK, so

24  it's actually 1:00 a.m. there.  Okay.

25                All right.  This is how -- this is how -- I

```
 1   decided.  So what we're going to do is we're going to listen

 2   to -- we're going to tell Ms. Lujan the situation, ask her to

 3   speak to her client, current client or former client, we're

 4   not sure of the status, but it sounds like she's still the

 5   attorney.  And then -- then depending on what he says, like if

 6   he says I am not going to -- can you guys hear me?

 7                 MS. M. MILLER:  Yes, Your Honor, we could -- I

 8   just got an e-mail from Mr. Marinho.

 9                 THE COURT:  Oh, and?  You want -- and what did he

10   say?

11                 MS. M. MILLER:  May I read what he said?

12                 THE COURT:  Sure.  Please.  How timely, go ahead.

13   Yes, what did Mr. Marinho say?  Yes?

14                 MS. M. MILLER:  He said -- hold on.  "Hafa adai

15   Senora Miller, I have just seen this news in the newspaper

16   today.  I don't know if it refers to me."  And then he sent a

17   link -- he sent a link to the Post Guam News article, which

18   had a review about Mr. Lujan's filing on Sunday.

19                 And then he says, "as I told you after speaking

20   with Joseph, the American pilot, and another pilot, who lives

21   here in Spain, they made me see that with my help to Hansen,

22   they could get me a lawyer and help me not having a problem

23   with them in the future, neither with the government of the

24   United States because in the future, the government of the

25   United States could do something so that I would lose my
```

1  pilot's license and that should not be trusted.  At first, I

2  was scared and I sent a video to Rufus, but I have never said

3  that the government forced me to lie because I have always

4  told the truth in my deposition.

5           The only thing was the way I was held.  But

6  seeing the American laws, a foreign citizen can be retained to

7  clarify a crime.  I'm sorry if this has gotten you into any

8  trouble.  It's a good thing that several conversations with

9  Joseph are recorded and some of them scared me not to continue

10  my deposition against Hansen, because they can kill me in the

11  future.  The next days with these doubts, I decided to

12  continue with the truth because their intention was to pay a

13  lawyer to get a new deposition of mine and delay the trial

14  further or simply lie that you are trying to annoy Lujan,

15  something they thought of delaying and get you out of the way

16  because you are very intelligent and hardworking and stand up

17  to him.  Sorry, I shouldn't have fallen into this trap and I

18  hope you don't have any problems.  Senor Eduardo."

19           So I could send this, Your Honor, to you and to

20  defense Counsel and to --

21           THE COURT:  Very nice.

22           MS. M. MILLER:  -- his attorney.

23           THE COURT:  Okay, who is Joe?  Who is Joseph?

24           MS. M. MILLER:  Joseph is, Your Honor, the

25  gentleman who kept contacting Mr. Marinho ostensibly on behalf

1    of the defendants after he agreed to come to testify live,

2    which caused Mr. Marinho to change his mind and be afraid

3    about testifying live.  And he's continued to contact

4    Mr. Marinho throughout.  From the time Mr. Marinho said I will

5    come live until now, this person Joe who apparently works for

6    the defendants, has been communicating with him.  We provided

7    those communications to Your Honor in our motion.

8               THE COURT:  Thank you.  All right.  Yes,

9    Mr. Lujan?  So now you got the latest.  But again, I'd rather

10   hear from the guy, if he's going to speak.

11              MR. LUJAN:  That's right.  But, oh, Your Honor,

12   excuse me.

13              THE COURT:  Go ahead.

14              MR. LUJAN:  But I believe, because he's made

15   accusations against Ms. Lujan, that the Court needs to appoint

16   a different lawyer to represent Marinho.

17              THE COURT:  Okay.  Well, we'll get to that point.

18   We'll see what happens.  She didn't make any accusation

19   against Lujan.

20              MR. LUJAN:  He did.

21              THE COURT:  Oh, he did?  We don't know.

22              MR. LUJAN:  Well, he -- it's in the video.

23              THE COURT:  No, Mr. Lujan, I need to hear from

24   him.

25              MR. LUJAN:  No, but it's, I'm saying, in the

1  video.

2              THE COURT:  Yeah, the video is not a hundred

3  percent clear.  We all -- it's subject to at least five

4  interpretations here.

5              MR. LUJAN:  Your Honor, it's very clear that he

6  accuses the government of forcing him to lie.  It's very clear

7  but -- but -- but --

8              THE COURT:  No, it's clear that he thinks that

9  the government is dirty, but I don't know about forcing him to

10 lie.  There is a difference.  He can say the government is

11 dirty as hell but --

12             MR. LUJAN:  Okay, so I'll settle with the dirty.

13             THE COURT:  Well, that's all you have to settle.

14             MR. LUJAN:  I'll settle because the government is

15 dirty and --

16             MS. M. MILLER:  Your Honor, again.

17             THE COURT:  Wait.  Wait.

18             MR. LUJAN:  I'm not finished.

19             THE COURT:  One time.  You down.  You up.  Ms.

20 Miller, let me just say, you guys -- you make your objections

21 later and the Court will strike all the bad stuff later.

22 Okay?  But we don't have to keep going up and down because,

23 guess what, my court reporter cannot -- and I can't hear you.

24 You guys.

25             MR. LUJAN:  Right.  I do want to state something,

```
 1    before the -- before the break.

 2                    THE COURT:  Yes?

 3                    MR. LUJAN:  Before the break.

 4                    THE COURT:  Just now?  The recent break?

 5                    MR. LUJAN:  Yes, Your Honor.  Ms. Miller said

 6    that the reason why this motion was filed was because we found

 7    out that Mr. Green was cooperating, okay, and had agreed to

 8    testify.

 9                    THE COURT:  Yeah.  She did say that.

10                    MR. LUJAN:  That's right.  Well, guess what, Your

11    Honor.

12                    THE COURT:  Yeah.

13                    MR. LUJAN:  This motion was filed, I believe, on

14    the 7th, yesterday?  Or no, I believe the 6th.  It was filed,

15    but, yes, March 6th and guess what?  We received -- all of us

16    received a letter from Mr. Stephen Leon Guerrero yesterday,

17    yesterday, March 7th, telling us and providing us a copy of

18    the immunity agreement with Mr. Green.

19                    So it's another instance of where the government

20    lies, because we didn't receive it and all of us are here.  We

21    received it yesterday, the motion was filed one day before

22    that, March 6th.  So you know, it's another instance where the

23    government says something and it's proven to be not true.

24                    THE COURT:  Okay.  Thank you.

25                    MR. LUJAN:  Thank you, Your Honor.
```

```
 1                    THE COURT:  All right.  Go ahead.  We're just
 2   going -- we're only talking because Lujan is not here, yet.
 3                    MS. M. MILLER:  Right.  Right, no but --
 4                    THE COURT:  Oh, there she is.
 5                    MS. M. MILLER:  One thing, Your Honor.
 6                    THE COURT:  Yeah.  Ms. Lujan.
 7                    MS. M. MILLER:  Mr. Peter Perez, who is
 8   representing the defendant, contacted the government on Sunday
 9   and we met with him on Saturday and he told us he was letting
10   all of the defendants know that Mr. Reed was going to be
11   testifying immediately --
12                    THE COURT:  I figured that.  Yeah.  I figured he
13   would do that.
14                    MS. M. MILLER:  So you know, another accusation
15   that is completely unfounded.
16                    THE COURT:  Okay, so...
17                    MR. LUJAN:  Your Honor, Your Honor, let me rebut.
18   We received Mr. --
19                    THE COURT:  You got 30 seconds because Ms. Lujan
20   is here.
21                    MR. LUJAN:  We received Mr. Perez's letter
22   yesterday.
23                    THE COURT:  Okay so --
24                    MR. LUJAN:  The 7th.
25                    THE COURT:  Got it.  Got it.
```

1          MR. LUJAN:  There is Ms. Miller again, you know,

2     that rebuts her lie.

3          THE COURT:  No, Mr. Lujan, okay, first of all,

4     stop saying she's lying.  She may not be -- you don't know if

5     she's lying.  She may be misrepresenting or not saying it the

6     way you want it to be heard, but let's not accuse each other.

7          MR. LUJAN:  Okay, I'll settle for

8     misrepresentation.  She's in the habit of that.

9          THE COURT:  But you know, these are all

10    allegations.  And frankly, when it's all said and done, I'm

11    going to strike all of these accusations at some point.

12          Okay, Ms. Lujan, can you come on in because we're

13    trying to stay on schedule and now I'm off schedule because of

14    this motion.  Next time, we're going to hear the motions at

15    7:00 a.m., maybe 6:00 a.m., next time, or 6:00 p.m. to

16    10:00 p.m.  But never during the jury time, FYI.  I already

17    told you guys that.  I warned you.  Ms. Lujan.

18          MS. LUJAN:  Hi, good morning, Your Honor.

19          THE COURT:  Good morning, Ms. Lujan.  Thank you

20    for coming.

21          MS. LUJAN:  Sure.

22          THE COURT:  Long story short, you were

23    representing Mr. Marinho before.  Are you still representing

24    him?

25          MS. LUJAN:  My understanding is no.

1          THE COURT:  Reason?

2          MS. LUJAN:  Our representation was specifically

3     for the Rule 15 material witness deposition.

4          THE COURT:  Okay.  Can I ask you to speak to him

5     because I'm going to put you back on, I'm going to appoint you

6     right now, reappoint you, assuming -- I'm going to assume

7     there is no issues because, you know, anyway, I'm going to

8     reappoint you to get ahold of him.

9          Apparently there is a motion made by the defense

10    saying that there may have been some improper misconduct.  And

11    the prosecution has heard that there may be improper

12    misconduct by the defense and prosecution -- and defense

13    thinks there's improper misconduct by the prosecution.  You

14    know, vice versa.

15         MS. LUJAN:  Your Honor, perhaps I can make this

16    easy.  I've been Zooming into the proceedings.

17         THE COURT:  Okay.  Okay.  See.  That's what I

18    thought, I thought you'd be Zooming in.  That would not be

19    difficult to get you here.  All right.  So all I want to know

20    is, can you speak to Mr. Marinho who is either in the United

21    Kingdom or in Spain, I think he's in the UK, assuming that the

22    video is accurate.  And do you know how to get ahold of him?

23         MS. LUJAN:  I have an old contact number, I could

24    reach out, but Your Honor before I do that, I actually have a

25    huge concern about doing so.

1          THE COURT:  Reason?

2          MS. LUJAN:  I listened to his video-recorded

3   statement this morning.

4          THE COURT:  Which seemed a little choppy and not

5   very clear, but go ahead.

6          MS. LUJAN:  Right.  But what was very clear was

7   he was accusing me of betraying him.

8          THE COURT:  Well, if you think that's what he

9   said but I don't know.  I really don't know.  And I'm not

10  going to pretend I know because everybody here has their own

11  interpretation.

12          So I think that -- and you'll find out soon, if

13  he thinks you betrayed him and you'll be able to get off the

14  case I'm sure.  But the point is, if he speaks in his native

15  language, I believe, and if he has somebody to interpret, it

16  will make it so much easier.

17          MS. LUJAN:  So what would the Court want?  If I

18  were to reach out to him, would the Court want for him to

19  appear via telephone?  Via Zoom?

20          THE COURT:  I would like to -- him to --

21  Mr. Lujan has a motion and he's saying it's based on -- based

22  on two things, but more specifically, with Marinho, it's based

23  on the contents of that conversation -- conversation.

24          MS. LUJAN:  Essentially, it was a ruse?  Is my

25  understanding of the defense allegation.

1          THE COURT:  So my -- yeah, and Mr. Lujan thinks

2     that there is a set up by the prosecution.  Anyway, if that's

3     the only basis for his justification, I mean his only basis

4     for this motion, then the Court is going to let him -- we're

5     going to explore whether Marinho will testify and say exactly

6     what he wants to say, whatever it might be.

7          MS. LUJAN:  So here's my dilemma --

8          THE COURT:  I don't really care about Mr. Lujan's

9     theory, I don't care about the prosecution's theory, I just

10    care about what the evidence is.

11         MS. LUJAN:  Sure, Your Honor, and here's my

12    dilemma.  I would actually move to withdraw right now and ask

13    that another attorney speak to Mr. Marinho about this matter.

14    Because his -- the allegation is that the public defender's

15    office, primarily me, because I represented him, betrayed him.

16         So if that is true, I would be moving to withdraw

17    anyway.  If it's not true and I stay on, then that actually

18    implies to the defense that perhaps their allegation of a ruse

19    may have some merit.  So either way, my staying onboard to

20    represent Mr. Marinho, I believe, would be inappropriate at

21    this time.  So --

22         THE COURT:  Can another federal public defender,

23    you guys have -- is any other -- I guess John Gorman was on

24    the case, initially?

25         MS. LUJAN:  Yes, I think so initially but then I

```
1    was assigned the case.  And you know, Your Honor, the public

2    defender is one office.  So it's not like we could just

3    interchange attorneys.

4              So I would ask that a CJA panel attorney be

5    appointed to speak to Mr. Marinho about this matter.  To me,

6    the difficult issue relating to the material witness

7    deposition, in which I was appointed --

8              THE COURT:  Yeah.

9              MS. LUJAN:  -- our office was appointed, that's

10   done.  So I believe those specific issues are resolved.

11             THE COURT:  I'm going to keep you on.  I think

12   that you should just find out and ascertain whether or not he

13   feels there is a conflict with you.  And the other part, I

14   just don't think there is an issue.  So I mean, I want -- I

15   got 75 jurors waiting.  Let's just see -- you know, you're a

16   good attorney.  I don't know what he said honestly.

17             MS. LUJAN:  I appreciate that, Your Honor.  But

18   you know what I'm also trying to do is protect Mr. Marinho's

19   interest, you know, that still is my overarching duty as his

20   Counsel.  But likewise, getting a CJA panel attorney now would

21   prevent further delay because what I perceive will happen is,

22   I will speak to Mr. Marinho, I will have to come back to the

23   Court and report to the Court whether or not his statement

24   that I betrayed him is accurate.  And you know, that's just a

25   further proceeding that the Court can do away with by simply
```

1   appointing another attorney to represent him here out.

2              THE COURT:  Yeah, but if he says it's not

3   accurate and that's not what he meant, then you're fine.

4              MS. LUJAN:  Well, I don't know that that's

5   necessarily true for Mr. Marinho.  I believe that might

6   actually raise other issues as to Mr. Marinho if I were to

7   stay onboard.

8              THE COURT:  But what issues?  I don't get it.

9              MS. LUJAN:  So as I noted earlier, I understand

10  and, please, the defense can correct me if I'm wrong, but I

11  understand that that video is alleged by defense to

12  essentially be a ruse to one of the defendants to make it seem

13  that Mr. Marinho, perhaps, is sympathetic to that --

14  defendant.

15             THE COURT:  It sounds like it.  But you know

16  what, let me just say, Ms. Lujan, I don't care what their

17  arguments are.  I just care about what Mr. Marinho is going to

18  say.

19             MS. LUJAN:  Right.  And what I'm saying to the

20  Court is, if I consult with Mr. Marinho and based on that

21  consultation I stay on as Counsel, it essentially implies that

22  Mr. Marinho, you know, I don't like to use the word *lie*, so

23  was perhaps dishonest about feeling betrayed by my office, and

24  therefore, further support the possible allegation that that

25  video was, in fact, a ruse to try and get the defense to

communicate with him, with Mr. Marinho directly.

And so I would, again, you know, Your Honor, I don't make these motions willy-nilly, the Court knows that. But in looking over that video, listening to it and then just thinking about the future ways that this could play out, I still believe that having a separate attorney, an independent attorney, to advise Mr. Marinho is the proper course.

You know, I take the allegation of betraying a client very seriously. And that allegation has been made in public on the record. And whether Mr. Marinho will confirm that or not, I don't believe it removes the stain, if you will, of that allegation in the public record that I, as his Counsel, betrayed him in prior court proceedings.

THE COURT: You haven't withdrawn, yet, your representation of the defendant, though.

MS. LUJAN: No, it was a special proceeding, Your Honor, that our office was --

THE COURT: You were only assigned for just that special proceeding?

MS. LUJAN: Yes.

THE COURT: And that was by what judge?

MS. LUJAN: Judge -- I believe it was judge Bordallo in July of 2020 for a Rule 15 material witness deposition. So I believe there was a recitation of the facts, Mr. Marinho had been arrested on a material witness warrant.

1    And you know, basically required to stay here on Guam.  He did

2    so voluntarily, consensually, to finish or do and finish a

3    deposition.  And then once the deposition was done, he was

4    released from the material witness --

5           THE COURT:  Well, let me just say this, I think

6    he clearly -- he, Marinho, is feeling nervous.  He's feeling

7    -- I mean it appears that he is, he's feeling nervous, he

8    doesn't know what's -- how to go, what to do, he already knows

9    you as his lawyer, I think you should just clarify to him,

10    find out what did he mean and then get back to us.  I don't

11    want... I don't want to get a new lawyer at this point and we

12    still have a little more time.  I have jurors that are here.

13    But I think that...yeah, anyway, that's what I'm thinking.

14           Yes, Mr. Lujan?

15           MR. LUJAN:  Your Honor, following up on Ms.

16    Lujan's comments, I represent Rufus.  And --

17           THE COURT:  Yeah.

18           MR. LUJAN:  Ms. Lujan is my niece.  And so there

19    is a potential, also, that a jury may think, you know, that

20    I'm in cahoots with my niece.  And so that will implicate my

21    representation of Rufus.  And I believe -- I agree with Ms.

22    Lujan, that the safest, the best way, unfortunately, you know,

23    the jury is here, but that you know, she has to be, you know,

24    allowed to withdraw because it's not just Ms. Lujan and

25    Mr. Marinho, it also implicates other relationships.  You know

1  Guam, and I'm sorry, but that's just how things, you know,

2  some people can think.

3          THE COURT:  Okay.  Point well taken.  You want to

4  say anything, Ms. --

5          MS. LUJAN:  That's another dimension.  You know,

6  and I mentioned to the Court that there are other layers,

7  that's one of them.  You know, the Court would like for me to

8  consult with Mr. Marinho, but if we take his statement that

9  I've betrayed him as true, then really that consultation is

10  inappropriate, so --

11          THE COURT:  No, that's true, but I don't take his

12  statement as that.  I don't know.  I -- it's hard to

13  understand him completely.  And you know that having a second

14  language, English is his second language, obviously.  We need

15  to hear directly what did he mean by all of that.  I'm just

16  not going to take that -- those few words to say, he feels

17  betrayed by the entire public defender's office, whatever it

18  is, I'm just not going to take that.  But anyway, listening to

19  the totality, I understand what you're saying.

20          MS. LUJAN:  Yes.

21          THE COURT:  Anything else to add on that?

22          MS. LUJAN:  You know, Your Honor, it's true that

23  in listening to that recording, there were some things that

24  were unclear, like the whole cat thing reference.

25          THE COURT:  The pink cat?

1          MS. LUJAN:  Right.  But I didn't hear any

2    ambiguity in his statements about the public defender betrayed

3    him.  So I want the record to be very clear that I feel

4    uncomfortable consulting with Mr. Marinho, especially after

5    he's accused me of betraying him.

6          THE COURT:  Okay.

7          MS. LUJAN:  I still believe that the best course

8    is to have a separate lawyer.

9          THE COURT:  He could be accusing Gorman, you

10   know, you never know.

11         MS. LUJAN:  I don't believe Mr. Gorman had any

12   actual direct contact with Mr. Marinho.

13         THE COURT:  Oh, he was just appointed.  That's

14   all?

15         MS. LUJAN:  Right, and then the case was passed

16   off to me.  And all contact with Mr. Marinho thereafter was

17   with me.  And it was, you know, a quite a long time, a period

18   of weeks, if not months, in which I interacted with

19   Mr. Marinho.  So when he accuses the public defender, he's

20   accusing me.  He's not accusing anyone else in the office.

21         THE COURT:  All right.  Thank you.  Your point is

22   taken.

23         Ms. Marie Miller, do you want to make any

24   comments?

25         MS. M. MILLER:  No.  The only observation I

```
1    absolutely respect what Ms. Lujan is saying and I understand

2    her concerns.  Mr. Lujan is saying that, you know, this

3    relationship is a conflict or a problem.  That was never

4    raised during the Rule 15 deposition and for the entire week

5    that Mr. Marinho's deposition was taken, that he consulted

6    with Ms. Lujan, that he shared information with her, etc.

7              So I don't think that has anything to do with it.

8    I do agree that the fact that he made accusations is

9    problematic.  I don't believe there is any validity to those

10   accusations, I think the e-mail Your Honor just -- I forwarded

11   it to your Court and to defense Counsel.

12             THE COURT:  Yeah.

13             MS. M. MILLER:  That Mr. Marinho sent shows

14   exactly what we all thought what was happening, which is, this

15   is a person vacillating, feeling threatened, feeling

16   uncomfortable, feeling lack of knowledge about what's really

17   going on and being unsure of himself and afraid.  I think

18   that's what's really going on.  But I absolutely respect Ms.

19   Lujan's position.

20             THE COURT:  Okay.  Thank you.  All right.  Last

21   word?  And then I'm going to make a decision.  Then we're

22   going to take a lunch break and I'll see you guys at 11...

23   I'll see you at 12:15.  Go ahead, yes, Mr. Lujan.

24             MR. LUJAN:  Okay.  Your Honor, to respond to Ms.

25   Miller's statement, had Mr. -- this accusation against Ms.
```

1 Lujan exist on, you know, during the period of the deposition,

2 I would have raised it, but there was nothing for me to object

3 to then.

4                THE COURT:  Okay.

5                MR. LUJAN:  Thank you.

6                THE COURT:  All your points are taken.  The Court

7 will ask Ms. Lujan to work closely with Louie Yanza next

8 attorney on the panel to get him up to speed and maybe you

9 could ascertain with Louie Yanza whether or not that he did

10 mean that there was a betrayal.

11                MS. LUJAN:  Yes.

12                THE COURT:  If there is no betrayal, Louie Yanza

13 will be right there.  He's the next on the CJA panel.

14                Are there any issues what Louie Yanza having any

15 conflicts with any of the defendants or anything in this case?

16                MR. LUJAN:  For me, Your Honor, none.

17                THE COURT:  Nothing for -- okay.

18                MR. LUJAN:  Well, for Mr. Crowe, none.

19                THE COURT:  Mr. Crowe, yes.  Mr. Martin?

20                MR. MARTIN:  Your Honor, I don't know him so I

21 would see no reason.

22                THE COURT:  Well, with your client, yourself or

23 your client, you guys have any issues?

24                MR. MARTIN:  Neither one of us have any problem

25 with him, Your Honor.

```
1                THE COURT:  Wait.  Wait.  I think Mr. Perez wants
2    to talk to you.
3                MR. PEREZ:  May I speak to them real quick?
4                THE COURT:  Yeah.
5                MR. PEREZ:  If I may.  I just want to pop in,
6    talk to them real quick.
7                THE COURT:  Come on.  You guys are eating into my
8    lunch hour.  Let's go.  Yes?
9                MR. MCCONWELL:  Your Honor, my client --
10               COURT REPORTER:  Sir, can you speak into the
11   microphone, please.
12               THE COURT:  The microphone, Mr. McConwell, if you
13   don't mind.  Mr. McConwell, yes?
14               MR. MCCONWELL:  Let me let Mr. Perez.
15               THE COURT:  Yes, Mr. Perez?
16               MR. PEREZ:  A conflict between Mr. Yanza and a
17   Hansen employee.  I won't go into detail but it's a major
18   conflict.
19               THE COURT:  Oh, is it somebody that is involved
20   in this trial?
21               MR. PEREZ:  No, an employee close with the
22   defendants.
23               THE COURT:  Okay, so you think -- okay, so Yanza
24   is out.  Let me see who is next on the list.  How about -- can
25   somebody send me the list.  Do you have the list here?
```

```
 1                  (Discussion with clerk.)

 2                  THE COURT:  No, he hasn't been here.  I haven't

 3       seen him in Court in a long time.  I want somebody fast.  Let

 4       me see the list.  I'm going to pull out somebody on the list

 5       or I'm going to get somebody off the list.  Let me see.

 6                  Jay Arriola?  Any conflict with Jay Arriola?

 7       Anybody?

 8                  MR. MARTIN:  No, Your Honor, on behalf of

 9       Mr. Walker.

10                  MR. LUJAN:  Your Honor, the only problem I have

11       is because of the allegation that -- you know, that Evelyn

12       Mantanona was interviewed.

13                  THE COURT:  Oh, that's right.  He's involved in

14       the Boom Boom trial.  He's out.

15                  MR. LUJAN:  That's right.

16                  THE COURT:  Can somebody give me the list?  Let

17       me look down the list.  He's involved in the Boom Boom, John

18       Mantanona trial.  He's out.  Um...

19                  (Pause.)

20                  How about Joe Razzano?  Any conflict with Joe

21       Razzano?

22                  MR. LUJAN:  I have none, Your Honor.

23                  THE COURT:  I'm sorry?

24                  MR. LUJAN:  We have none, speaking for Mr. Crowe.

25                  THE COURT:  Crowe.
```

```
1                 MR. LUJAN:  We have none.

2                 MR. MARTIN:  Mr. Walker has no objection either,

3    Your Honor.

4                 THE COURT:  Okay, Mr. McConwell.

5                 MR. MCCONWELL:  Nor does Mr. Kapp.

6                 MR. HAN:  None, Your Honor.

7                 THE COURT:  Joe Razzano.

8                 MS. LUJAN:  Yeah, I can give him a call.

9                 THE COURT:  Why don't you give him a call.  So

10   here we are, it's now 11:35.  We will -- Counsels, you can go

11   to lunch from 11:35 to 12:15.  We'll be back at 12:15.  Can

12   you report back to us by 12:15?

13                MS. LUJAN:  Yes, Your Honor, I can.

14                THE COURT:  Thank you very much, Ms. Lujan.

15                MS. LUJAN:  You're welcome.

16                THE COURT:  I think -- I'm not going to have you

17   off the case until it's clarified.  But at least we have

18   somebody back up right there.

19                MS. LUJAN:  Okay.

20                THE COURT:  Okay, thank you.  Have a nice lunch,

21   everyone.  Take care.  I'll see you soon.

22                (Recess taken at 11:34 a.m.)

23                (Back on the record at 12:21 p.m.)

24                THE COURT:  So let's see, do we see the lawyers?

25   Lani Lujan and... Razzano, right?  Did I put Razzano in?
```

```
 1                    (Discussion with clerk.)

 2                    THE COURT:  Can we try to track him because our

 3     jurors are waiting.  They've eaten lunch, right?  Done?

 4                    (Discussion with clerk.)

 5                    Are they all comfortable, wherever they, okay,

 6     all right, Counsels, let's just see what the status is with

 7     the two lawyers.  Does anyone know for sure whether the

 8     witness is in UK?  Does it appear that way or Spain or

 9     wherever, does anybody know?

10                    MS. M. MILLER:  No, Your Honor, we have --

11                    THE COURT:  No idea?

12                    MS. M. MILLER:  No knowledge.

13                    THE COURT:  Okay.  And defense, do any of you

14     know?

15                    MS. LUJAN:  (Shook head.)  We have no idea.

16                    THE COURT:  Or believe to know or suspect

17     anything?  Yes?

18                    MR. MARTIN:  No, Your Honor.

19                    THE COURT:  No one, okay.  Mr. McConwell?

20     Nothing?  Mr. Han?

21                    MR. HAN:  No, Your Honor.

22                    THE COURT:  Let's see what the status is.  If --

23     let's just find out.  I'm thinking this is my thought, that if

24     Mr. Marinho, I'm sorry, it's Marinho, if he refuses to testify

25     or -- based on advice of Counsel, whatever reason, on this --
```

```
 1   with regarding this particular video, then there will be no
 2   basis within which to -- I mean there is no way we could
 3   continue on with the motion, Mr. Lujan.  The Court will deny
 4   the motion on that basis.
 5              On the issue of the jury influence, we can deal
 6   with that later.  That's what I believe.  I mean after trial
 7   or -- you know, at some other point so we won't get distracted
 8   because, No. 1, no harm, no foul, the juror is gone.  She's
 9   gone.  That's my -- she's not part of the panel.  She was
10   excused.
11              MR. LUJAN:  Your Honor.
12              THE COURT:  That's my thought process, yes, as I
13   ate lunch quickly, that's what I thought about, yes.  Go
14   ahead.
15              MR. LUJAN:  Your Honor, who's excused?
16              THE COURT:  The juror, the juror that really
17   liked you and was complimenting you, that juror.  That
18   potential juror, she's gone.  Remember?
19              MR. LUJAN:  Okay.  So can we have the names?
20              THE COURT:  Oh, yeah.  Yeah.  Oh, she's on her
21   way, Lujan is on her way.  Can you have the names of who?  The
22   final jurors?
23              MR. LUJAN:  Well, the jurors that, you know,
24   that's to be excused.
25              THE COURT:  No, no, no.  The juror that -- the
```

```
 1   basis of your motion deals with the juror that talked about
 2   your donation.  So my point is, on that particular basis for
 3   your motion to recuse the entire prosecution team.
 4                MR. LUJAN:  Right.
 5                THE COURT:  The Court will deny that,
 6   preliminarily, for purposes of that -- this motion at this
 7   time.  And that if there is any other issue regarding that,
 8   like ethical issues or administrative issues, then we could
 9   deal with that after trial.  That's my point.
10                MR. LUJAN:  Okay.
11                THE COURT:  Let's go ahead and hear from Marinho.
12                MR. LUJAN:  I mean, Your Honor --
13                THE COURT:  Lujan is on her way, Lujan is on her
14   way.
15                (Pause.)
16                THE COURT:  Where, Mr. Lujan?
17                MR. LUJAN:  Well, you know, of course we'll react
18   when you --
19                THE COURT:  Make my ruling?  That's my
20   preliminary --
21                MR. LUJAN:  I understand.
22                THE COURT:  That's my preliminary thought process
23   so you guys know where I'm coming from.
24                MR. LUJAN:  All right.  That's fine.
25                THE COURT:  Assuming I do go that way, then we'll
```

1    -- I've issued a decision, I think I have a couple more

2    motions to do, but I don't think I have to deal with that

3    right now.  We could go right into our challenges and get the

4    -- call in the jurors for the peremptories.

5                        (End of excerpt.)

6         -----------------------------------------------

7                   CERTIFICATE OF OFFICIAL REPORTER

8

9    CITY OF HAGATNA              )
                                  )  ss.
10   TERRITORY OF GUAM            )

11

12        I, Veronica F. Flores, Official Court Reporter for

13   the District Court of Guam, do hereby certify the foregoing

14   pages, 1 to 94, to be a true and correct transcript of the

15   proceedings held in the above-entitled matter, to the best of

16   my ability.

17        Dated this 20th day of March 2022.

18

19                        /s/Veronica F. Flores
                          Veronica F. Flores
20

21

22

23

24

25